**STATE of Delaware, Plaintiff Below, Appellant,**

v.

**Bruce BENNEFIELD, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: March 14, 1989.
Decided: Dec. 15, 1989.
As Corrected: Dec. 19, 1989.

Keith A. Trostle (argued), Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellant.

Howard F. Hillis (argued), Wilmington, for appellee.

Before CHRISTIE, C.J., and HORSEY and HOLLAND, JJ.

HORSEY, Justice.

Pursuant to 10 *Del.C.* § 9903,[1] the State has appealed to this Court from a Superior Court jury verdict finding defendant Bruce Bennefield not guilty of first degree murder in connection with the death of Marzette Traylor. The subject of appeal is the defense counsel's closing argument to the jury, during which defense counsel verbally attacked the character of several principal State witnesses, characterizing them, *inter alia*, as "scum," "liars," "snakes," and "scoundrels." Neither the prosecutor nor the trial court interrupted or objected, during or after the summation.

This Court granted the State leave to raise two questions certified by the Superior Court concerning conduct of counsel during closing summation:

Does the trial court, as a matter of law or procedure, have the obligation to intervene by interrupting defense counsel who, while engaged in closing summation to the jury, is flagrantly violating the

guidelines established in *State of Delaware vs. Brokenbrough* [sic] [Del.Supr., 522 A.2d 851 (1987)] by characterizing the State's witnesses as "liars", "snakes" and "scum", even though the State has raised no independent objection[?]

Must the State formally object in the presence of the jury, where defense counsel, while engaged in closing summation to the jury, is flagrantly violating the guidelines established in *State of Delaware vs. Brokenbrough* by characterizing the State's witnesses as "liar", "snakes" and "scum", when to do so may create an unfavorable impression with the jury, simply to reserve its right of appeal?

Following a careful review of the trial record, we conclude that, although some of defense counsel's language was clearly improper, the conduct of defense counsel did not, on the whole, rise to the level of "flagrantly violating" the guidelines established in *Brokenbrough v. State*, Del.Supr., 522 A.2d 851 (1987). Therefore, because the facts of the case do not support the questions as certified, we decline to answer the questions in the form stated. We take this opportunity, however, to reiterate well-settled Delaware law regarding the standards applicable to defense and prosecuting attorneys during summation.

The defense and prosecution alike "must refrain from interjecting personal beliefs and facts outside of the record into the argument to the jury." *Michael v. State*, Del.Supr, 529 A.2d 752, 763 (1987); ABA Model Rules of Professional Conduct, Rule 3.4(e) (1983); *Grayson v. State*, Del.Supr., 524 A.2d 1, 3 (1987); *Brokenbrough*, 522 A.2d at 858–861; ABA Standards for Criminal Justice, §§ 4–7.8, 3–5.8 (2d ed. 1986).

■ Delaware law is equally clear that while the court has an ongoing responsibility to maintain the "highest standards of trial advocacy," *Brokenbrough* at 863,

1. 10 *Del.C.* § 9903 permits this Court to accept, in its discretion, appeals to determine important questions of law and procedure on an advisory basis for future cases. *State v. Gwinn*, Del.

Supr., 301 A.2d 291, 292 (1972). The opinions under such appeals do not affect the rights of the parties in the underlying action.

counsel must timely object to closing remarks of opposing counsel that are arguably improper in order to preserve the issue for appeal. This requirement equally applies to counsel for the State and counsel for the defense. Generally speaking, failure to make a contemporaneous objection constitutes an effective waiver of the claim, and unless the error is plain or fundamental so as to deprive claimant of a fair trial, this Court will not consider an issue which was not raised below. *Michael*, 529 A.2d at 762; Super.Ct.Crim.R. 30(a); *Goddard v. State*, Del.Supr., 382 A.2d 238, 242 (1977).

## I

Marzette Traylor died on May 27, 1987 as a result of severe head wounds inflicted with a blunt instrument on May 15, 1987. On September 2, 1987, Bruce Bennefield was indicted for first degree murder, possession of a deadly weapon, robbery and conspiracy in connection with Traylor's death. Bennefield's trial commenced on January 19, 1988. The State maintained that Bennefield was guilty of felony murder for recklessly striking Traylor in the head with a crowbar during an argument over drugs.

The State's case against Bennefield consisted mainly of testimony from witnesses whose credibility was "rightfully" susceptible to attack.[2] The Deputy Attorney General concedes as much in his opening address to the jury. He stated that many of the State's witnesses were admitted drug addicts, dealers, and convicted felons. The State then added that two of its witnesses had had charges against them dropped or had received a monetary reward in exchange for their testimony. To place defense counsel's closing remarks in context, we recount portions of the testimony of certain witnesses called by the State in its case-in-chief.

Edwin Corbin testified concerning a conversation he had with the defendant, Bennefield, at Gander Hill Prison after Bennefield's arrest.[3] According to Corbin, Bennefield had admitted that he had killed Marzette Traylor. Corbin stated that he had been given fifty dollars for his statement, along with a promise that the State would drop a robbery charge then pending against him. Corbin also admitted that he had lied earlier in signing a document stating that he had received nothing in exchange for his statement. Finally, Corbin admitted that he was a convicted felon.

A second State witness, Gary Bleen, also a convicted felon, testified that he, together with the defendant, the victim and another man, had driven to Philadelphia on May 14th to buy drugs. Bleen also stated that he was a marijuana user. A third State witness, Larry Duncan, testified that he and another man had spent the night of the murder together getting high on cocaine until about 8:00 the following morning. Carlton Armstead, also a State witness, testified that he had sold Bennefield cocaine on the morning of May 17, 1987. Armstead further admitted that he was a twice-convicted felon, had been a dope addict for twenty-two years, was an alcoholic and an intravenous drug user, and had lied under oath about selling drugs.

At the close of trial, defense counsel aggressively attacked the credibility of all the State's witnesses. Counsel described some, if not all, of the State's witnesses in the following terms: "drug users," "slime," "felons," "scum," "admitted liars and scoundrels." Counsel characterized all of them as "snakes." During an impassioned closing argument to the jury, defense counsel frequently resorted to derogatory terms in characterizing the State's witnesses. "We're dope dealers, we're addicts, we're liars, we're scum, we're self-servers. But you believe us. We're bad."

---

**2.** The Deputy Attorney General, in his opening statement, informed the jury that they would "be called upon to judge the credibility of the witnesses who testify. This will not be as easy a task as one would expect. The defense will, no doubt, and rightfully so, attack the credibility of some of these witnesses."

**3.** Corbin had been placed in Gander Hill Prison after his arrest on a charge of assault of Simmie Traylor, Marzette Traylor's brother.

In summarizing the testimony of Edwin Corbin, the defense attorney stated: "The thundering silence of the admitted liar and scoundrel, Corbin.... You could see the deceit in his eyes, the stealth in his posture, the silence, the reluctance, the abhorrence to speak out with this supposed knowledge, because he lied, self-serving, and ineffectively." Later, in closing, defense counsel again referred to Corbin: "[L]ike he's lied to you all along, a man that will admit to you, with that ... surly grin, with that snide what-are-you-going-to-do-about-it attitude."

In recalling the testimony of the State's second witness, defense counsel sarcastically restated Bleen's testimony as being: "After I worked all day, I'm willing to go, broke, with these other scoundrels, these other scum, these other drug users, and ride to Aramingo in Philadelphia for the ride. Spare me! That cries out in its lunacy."

In commenting on witness Carlton Armstead's testimony, counsel told the jury:

He's a liar by his admission. He's a man that has supported for twenty-three years a drug habit and has never in the last two years had his hands sullied by the labors of hard work, but he manages to eat and breathe, exist, and do dope for two years, but he doesn't sell any drugs. I'd like him to manage my portfolio with such success and efficiency. He's a liar and he sells drugs. To take drugs, he'd take the pennies off a dead man's eyes.... He looks like a healthy person. He looks like someone you'd like to dine with. He's scum. It's that simple.... Carlton Armstead would blame his mother to get another sniff of cocaine.

Early in his summation, counsel related to the jury a familiar homily about a snake that a woodsman had found nearly frozen in the woods. After the woodsman had taken pity on the snake and nursed it back to health, the snake bit the woodsman in the neck. When the woodsman cried out, "I saved your life, and you bit me," the snake replied, "You knew I was a snake when you took me in." In closing, counsel repeatedly reminded the jury of the analogy to be drawn between the various State witnesses and snakes.

Traylor is, even amongst the snakes, of no honor, will switch a bag and beat you in a second.... Marzette Traylor has been relieved of the burden of crawling in the gutter, of dealing with scoundrels and slime and drug addicts and users, and being one, and feasting upon other people, because, as the law of the jungle will tell you, sometimes you feast upon others and sometimes others feast upon you.

Neither before, during or after closing did the State interpose any objection to the defense tactic; and defendant was acquitted of all charges.

However, in the briefing of this appeal, the State now asserts that defense counsel's conduct was clearly improper and violates the ABA Standards Relating to the Administration of Criminal Justice [4] which we have adopted. *Michael v. State,* 529 A.2d at 763; *Brokenbrough v. State,* 522 A.2d at 858. The State asserts that counsel's behavior constituted flagrant misconduct amounting to plain error—thereby absolving the State from its obligation to object. The State would attribute this error to the trial court's failure to "control" defense counsel rather than to the State's oversight. The State asserts as fact that appellate courts have generally accorded defense counsel "more leeway" in closing argument to a jury than to the prosecution. Therefore, the State requests this Court to hold defense counsel to the same standard of compliance with the canons and rules of professional conduct to which the State is held as prosecutor.

---

4. The ABA Standards for Criminal Justice (2nd ed. 1986) §§ 4–7.8(b) and (c) provide:

(b) It is unprofessional conduct for a lawyer to express a personal belief or opinion in his or her client's innocence or personal belief or opinion in the truth or falsity of any testimony or evidence, or to attribute the crime to another person unless such an inference is warranted by the evidence.

(c) A lawyer should not make arguments calculated to inflame the passions or prejudices of the jury.

## II

■ We first address the issue of whether defense counsel's summation constitutes a "flagrant violation" of the guidelines established in *Brokenbrough*. We find it does not. Although we find the challenged remarks to be in certain respects improper, we conclude that counsel's conduct as a whole does not rise to the level of a "flagrant violation" of the ABA Rules.

Counsel's characterizations and use of descriptive terms are not impermissible to the extent they are based upon and supported by the record and fair inferences therefrom. Standard 4.7.8(a) of the ABA Standards for Criminal Justice states that "[i]n closing argument to the jury the lawyer may argue all reasonable inferences from the evidence in the record." During trial several witnesses admitted to having testified untruthfully; to having used or sold drugs; or to having a felony record. It was therefore not improper for counsel to use the terms "liars," "drug addicts," and "felons" in this instance. However, we find that defense counsel's use of terms such as "scoundrel," "slime," or "scum," and the characterization of witnesses as "snakes" was improper and impermissible.

Defense counsel's use of assertions which appeal to a jury's passions and prejudices rather than appealing to reasoned responses are improper tools for deciding a case. *Hooks v. State*, Del.Supr., 416 A.2d 189, 205 (1980). "Arguments which rely upon racial, religious, ethnic, political, economic, or other prejudices of the jurors introduce elements of irrelevance and irrationality into the trial which cannot be tolerated in a society based upon the equality of all citizens before the law." Commentary to ABA Standards, Prosecution and Defense Function § 5.8(c). In this case, defense counsel's verbal attacks were especially improper and therefore prejudicial to the administration of justice. We refer to counsel's comments describing a witness: "He's a liar and he sells drugs ... [t]o take drugs, he'd take the pennies off a dead man's eyes"; and other remarks such as: "the victim has been relieved of the burden of crawling in the gutter or dealing with scoundrels and slime." Such comments were highly prejudicial and fall well below acceptable standards for Delaware courts. We have clearly and repeatedly so ruled. *Hooks*, 416 A.2d 189; *see Michael*, 529 A.2d 752; *Hughes v. State*, Del.Supr., 437 A.2d 559 (1981); *Brokenbrough*, 522 A.2d 851.

■ We have previously stated that counsel for the State and defense are to be held to equal standards in this regard. *Michael*, 529 A.2d at 763. Counsel on both sides share a duty to confine arguments within proper bounds, and defense counsel, like the prosecutor, must not be permitted to make inflammatory or unfounded remarks. *See United States v. Young*, 470 U.S. 1, 8–9, 105 S.Ct. 1038, 1043, 84 L.Ed.2d 1 (1985). This Court expressly stated, in *Grayson v. State*, Del.Supr., 524 A.2d 1, 3 (1980), that the ABA Standards for Criminal Justice are to be applied evenly to defense and prosecution alike.

> Remarks calculated to evoke bias, passions, or prejudice 'should never be made in a court of justice by anyone.' There are many cases in which courts have reversed convictions as a result of inflammatory remarks made by the prosecutor.... This duty is reciprocal and it is improper conduct for defense counsel to make arguments calculated to appeal to such prejudices.

ABA Standards Relating to the Administration of Criminal Justice, Comment to Section 4–7.8 (2d ed. 1986) (citations omitted).

■ Nevertheless, we acknowledge that improper behavior from a prosecutor may be grounds for reversal while the same behavior from defense counsel escapes judicial review if the trial results in defendant's acquittal. This result is the practical effect of the constitutional safeguards within our legal system. However, it does not in any way establish a basis for expecting or allowing different levels of conduct from the defense than from the State.

■ We next address the duty of opposing counsel to object to improper conduct in order to request corrective action or to preserve the issue for appeal. Delaware

law is clear that counsel for the State as well as the defense must make a timely objection to closing remarks of opposing counsel to preserve the issue for appeal. Generally, counsel's failure to make a contemporaneous objection constitutes an effective waiver of the claim. *Michael,* 529 A.2d at 762; *Hooks,* 416 A.2d at 203; *Goddard,* 382 A.2d at 242.

The State argues that this duty to object is somehow excused or alleviated because of the court's responsibility to maintain high standards of trial advocacy. We disagree. "[U]nless the error is plain, within the technical meaning of the word, this Court will not consider an issue which defendant failed to raise below." *Goddard,* 382 A.2d at 242.

The State further points to a "tradition" that closing arguments are not to be interrupted by opposing counsel. We recognize no such tradition. In any event, nothing alters the primary legal duty of counsel to timely object to improper conduct.

> In this State, there is some tradition that objections to closing arguments are restricted. But this tradition cannot properly rest on restraint in the face of error. . . . It is inappropriate when counsel goes beyond these limitations. Timely objections can be vital to appropriate correction action and their necessity has been recognized by our law.

*Hooks,* 416 A.2d at 203 (citations omitted). Finally, the State suggests that by interrupting defense counsel during closing argument, the State prejudices itself and its case in the eyes of the jury. Once again, we disagree. An objection should be made anytime there is likelihood of disagreement over propriety of conduct.

■ Although we conclude that counsel has the primary obligation for objecting to improper conduct during closing argument, we note briefly the concurrent obligations of the court. The ABA Standards for Criminal Justice, 4–7.8(e) (2d ed. 1986) places a duty upon the court in these matters: "It is the responsibility of the court to ensure that final argument to the jury is kept within proper, accepted bounds." In *Brokenbrough,* we addressed at length the

trial judge's duty to control the conduct of the court's officers, and suggested "that the judge should act at times even without an objection. *Brokenbrough,* 522 A.2d at 863. We reiterate the requirement that trial judges ensure that final arguments are uniformly kept within proper bounds and thus relieve counsel of the unpleasant obligation of having to object during closing arguments.

\* \* \*

The foregoing is the Court's response to the questions as modified.