James K. LEWIS, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 354, 1999.

Supreme Court of Delaware.

Submitted: April 11, 2000.
Decided: July 28, 2000.

Bernard J. O'Donnell, Public Defender, Wilmington, Delaware, for appellant.

Elizabeth R. McFarlan, Department of Justice, Wilmington, Delaware, for appellee.

Before VEASEY, Chief Justice, WALSH and HOLLAND, Justices.

HOLLAND, Justice:

This is a direct appeal by James K. Lewis, the defendant-appellant. Lewis and his co-defendant, Linwood Black, were charged with Burglary in the First Degree, Unlawful Imprisonment in the First Degree, Assault in the Second Degree, Conspiracy in the Second Degree and two firearms offenses. Both defendants were represented at a joint trial by the same attorney. Each defendant presented a defense of mistaken identification and separate alibis. After a four-day jury trial, both defendants were convicted of all offenses.

When the co-defendants were sentenced, Black admitted that he had committed the charged offenses. He also advised the sentencing judge that a person other than Lewis had committed the offenses with him and that Lewis had not been involved. Based on Black's statements at sentencing, Lewis moved for a new trial. That motion was denied.

Lewis has raised two arguments on appeal. First, he submits that, as a result of the trial judge's failure to explore the potential conflicts that could arise from dual representation, his Sixth Amendment right to have the effective assistance of counsel at trial was violated. Second, Lewis argues that the trial judge erred in denying his motion for a new trial because of

Black's statements at sentencing that Lewis had not been involved in the crimes.[1]

We have concluded that Lewis' Sixth Amendment right to have the effective assistance of an appointed conflict-free trial attorney was violated because the record reflects an actual conflict and no valid waiver of that right by Lewis. Therefore, the judgments of conviction must be reversed. The assistant public defender who provided Lewis with exemplary and successful representation in this appeal did not represent Lewis at trial.

### Facts

Nicole Parks testified that she was staying overnight at the home of her friend in Riverside to watch her friend's two young children. Her boyfriend, Greg Selby, was also staying with her that night. Parks and Selby went to sleep in an upstairs bedroom.

Parks testified that she was awakened by two masked individuals, one with a gun, who entered the darkened bedroom shouting at her and Selby. The unarmed individual taped Parks' arms behind her back. Parks testified that she recognized the armed individual from his voice as Black, her former boyfriend. Parks did not recognize the second unarmed individual.

Selby testified that he too was awakened by shouting men. Selby recognized the masked assailant with the gun as Black. After being struck in the head with the gun, Selby punched Black in the face. A struggle ensued which carried out into the hallway. The pistol discharged and a bullet shattered the hallway window.

When the struggle began between Selby and the armed assailant, the other perpetrator fled downstairs and out of the house. Selby testified that the other man was also masked, but that from viewing the back of his head he recognized him as Lewis, Black's friend. Selby acknowl-

---

1. This contention has become moot because we have concluded that Lewis' first argument is meritorious.

edged that it was dark and that the second man who tied up Parks said nothing.

Lewis and his co-defendant, Black, were indicted, tried and convicted on identical charges. At trial, both Lewis and Black were represented by the same attorney. Lewis and Black each presented an independent alibi defense at trial.

Lewis testified that on the night the incident was reported, he went to his girlfriend's house shortly after midnight and watched television. According to Lewis, at about 3:00 a.m. Black came by to tell him that the police were looking for them about a burglary. Lewis admitted that he and Black were good friends. Lewis testified that he had not been with Black earlier on the night in question and had not assaulted Selby and Parks. Lewis' girlfriend, Tia Watson, substantially corroborated Lewis' testimony.

### Plain Error Standard

■ Lewis contends that the trial judge committed reversible error by failing to consider whether he should have been represented by a separate attorney. There are two procedural considerations that would generally bar our examination of Lewis' argument. First, since the question now raised by Lewis was not fairly presented to the trial judge, it will not be addressed by this Court unless "the interests of justice so require." [2] Thus, the applicable standard of appellate review requires Lewis to demonstrate plain error. Second, this Court does not usually consider ineffective assistance of trial counsel claims in a direct appeal.[3] In Lewis' case, however, the alleged error related to the effective assistance of Lewis' trial attorney *ab initio* and potentially undermined the attorney's effectiveness during the entire

proceedings. We have decided to address the merits of Lewis' argument because it presents important questions relating to the Sixth Amendment right to counsel, attorney ethics, judicial responsibility, and fundamental fairness in the administration of justice throughout a criminal proceeding.[4]

### Conflict of Interests and Attorney Ethics

The Delaware Lawyers' Rules of Professional Conduct impose limitations on multiple representation of clients. Rule 1.7(b) addresses the simultaneous representation of co-parties. The Comment to Rule 1.7 states "[t]he potential for conflict of interest in representing multiple defendants in a criminal case is so grave that *ordinarily* a lawyer should decline to represent more than one codefendant." [5] The United States Supreme Court has explained the rationale for the general rule against joint representation:

> The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants.[6]

Accordingly, the ABA Standards for Criminal Justice provide that, *except in unusual situations*, lawyers should routinely decline to represent multiple defendants in criminal cases. The specific applicable section of the ABA Defense Function

---

**2.** Supr. Ct. R. 8.

**3.** *Duross v. State*, Del.Supr., 494 A.2d 1265, 1267 (1985).

**4.** *See McBride v. State*, Del.Supr., 477 A.2d 174, 184 (1984).

**5.** Delaware Lawyers' Rules of Professional Conduct, Rule 1.7 Comment (1985) (emphasis added).

**6.** *Wheat v. United States*, 486 U.S. 153, 162–63, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

Standard regarding conflicts of interest provides:

(c) Except for preliminary matters such as initial hearings or applications for bail, defense counsel who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily defense counsel should decline to act for more than one of several codefendants except in unusual situations when, after careful investigation, it is clear either that no conflict is likely to develop at trial, sentencing, or at any other time in the proceeding or that common representation will be advantageous to each of the codefendants represented and, if either case, that:

(i) the several defendants give an informed consent to such multiple representation; and

(ii) the consent of the defendants is made a matter of judicial record. In determining the presence of consent by the defendants, the trial judge should make appropriate inquiries respecting actual or potential conflicts of interest of counsel and whether the defendants fully comprehend the difficulties that defense counsel sometimes encounters in defendant multiple clients.[7]

The ABA Defense Function Standards are "intended to provide defense counsel with reasoned and appropriate professional advice. They are also intended to serve as a guide to what is deemed to be proper conduct." [8]

■ The United States Supreme Court and this Court have held that the judiciary has an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings are fair.[9] Trial judges "must recognize a presumption in favor of a defendant's counsel of choice." [10] The Sixth Amendment right to have assistance by the attorney of one's choice, however, is not absolute.[11] In fact, the right to effective representation by an attorney with undivided loyalty is so integral to the proper administration of justice that, in some cases, it must take precedence over the expressed preference of the defendants and their attorney.[12] In *United States v. Dolan,* the Third Circuit held that the exercise of the court's supervisory powers by disqualifying an attorney representing multiple defendants, in spite of the defendant's express desire to retain that attorney, does not necessarily abrogate the defendant's Sixth Amendment rights:

when a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the [applicable] Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicat-

---

7. ABA Standards for Criminal Justice: *Defense Function, Conflicts of Interest* § 4–3.5 (3d ed.1993).

8. ABA Standards for Criminal Justice: *Defense Function, The Function and the Standards* § 4–1.1 (3d ed.1993)

9. *Wheat v. United States,* 486 U.S. at 159–60, 108 S.Ct. 1692; *In re Waters,* Del.Supr., 647 A.2d 1091, 1098 (1994).

10. *Wheat v. United States,* 486 U.S. at 166, 108 S.Ct. 1692 (concurring opinion).

11. *Id. See also Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

12. *United States v. Carrigan,* 2d Cir., 543 F.2d 1053, 1058 (1976) (concurring opinion).

ing the defendant's comprehension of the waiver. Under such circumstances, the court can elect to exercise its supervisory authority over members of the bar to enforce the ethical standard requiring an attorney to decline multiple representation.[13]

The Federal District Court for the District of Delaware has taken such action.[14]

The Federal District Court subsequently unequivocally held that a trial court may in certain situations reject a defendant's choice of counsel on the ground of a potential conflict of interest, because a serious conflict may indeed destroy the integrity of the trial process.[15] Similarly, this Court has held that "trial judges have the power to disqualify trial counsel, when necessary, to preserve the integrity of the adversary process in the actions before them."[16] It is not only the "interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases [that] may be jeopardized by unregulated multiple representation."[17]

## Sixth Amendment and Joint Representation

The Sixth Amendment right to the effective assistance of counsel provides for representation that is "free from conflicts of interest or divided loyalties."[18] Nevertheless, a defendant "may waive his right to the assistance of an attorney unhindered by a conflict of interests."[19] The standard for measuring an effective waiver of a constitutional right was set forth by the United States Supreme Court in *Zerbst*[20]:

> A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.[21]

This standard was subsequently refined when the Supreme Court held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing,

**13.** *United States v. Dolan*, 3d Cir., 570 F.2d 1177, 1184 (1978).

**14.** *United States v. Cooper*, 672 F.Supp. 155 (1987). *Accord United States v. Santiago–Lugo*, 1st Cir., 167 F.3d 81, 84 (1999); *United States v. Flanagan*, 3d Cir., 679 F.2d 1072, 1075–76 (1982), *rev'd on other grounds*, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984).

**15.** *Wheat v. United* States, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). *See* Ryan, *The Sixth Amendment Right to Counsel: A Criminal Defendant's Right to Counsel of Choice v. the Courts' Interest in Conflict–Free Representation*, 14 S.Ill. U. L.J. 657 (1990). *See*, Klein, Supreme Court Review: *Sixth Amendment—Paternalistic Override of Right to Conflict—Free Counsel at Expense of Right to Counsel of One's Choice*, 79 J.Crim. L. & Criminology 735 (1988).

**16.** *In re Waters*, Del.Supr., 647 A.2d 1091, 1098 (1994).

**17.** *Wheat v. United States*, 486 U.S. 153, 159–60, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

**18.** *United States v. Acty*, 77 F.3d 1054, 1056 (1996) (citing *Dawan v. Lockhart*, 8th Cir., 31 F.3d 718, 720–21 (1994)).

**19.** *Holloway v. Arkansas*, 435 U.S. 475, n. 5, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). *See Wheat v. United States*, 486 U.S. 153, 159–60, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) and *Glasser v. United States*, 315 U.S. 60, 70, 75–76, 62 S.Ct. 457, 86 L.Ed. 680 (1942). *See also Wilson v. Moore*, 4th Cir., 178 F.3d 266, 280–81 (1999). Some commentators contend that joint representation in criminal cases should be prohibited completely. *See, e.g.,* Tague, *Multiple Representation and Conflicts of Interest in Criminal Cases*, 67 Geo. L.J. 1075, 1076 (1979); Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney*, 62 Minn. L.Rev. 119 (1978); Lowenthal, *Joint Representation in Criminal Cases: A Critical Appraisal*, 64 Va. L.Rev. 939 (1978).

**20.** *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

**21.** *Id.*

intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." [22] Accordingly, the waiver of the right to have effective assistance by a conflict-free trial attorney must be: knowing, voluntary, and intelligent.[23]

The United States Supreme Court has "recognized that multiple representation of criminal defendants engenders special dangers of which a trial judges must be aware." [24] "Permitting a single attorney to represent codefendants ... is not per se violative of constitutional guarantees of effective assistance of counsel." [25] A trial judge confronted with the prospect of joint representation is immediately alerted to possible conflicts of interest and must take adequate steps to ascertain whether the conflicts warrant separate counsel.[26]

■■■ The right to have the effective assistance of a conflict-free attorney applies irrespective of whether the attorney is appointed or privately retained. In this case, both Lewis and Black were represented by the same assistant public defender. Twenty years ago, in *Cuyler*, the United States Supreme Court noted that the vast majority of public defender offices have a strong policy against multiple representation and that approximately half of the public defender officers never undertake such a representation.[27] When an indigent person like Lewis appears for trial represented by the same appointed attorney as his co-defendant, it is imperative that the trial judge make certain that he understand his right to have a conflict-free attorney appointed to represent him and that he has made an intelligent voluntary waiver of that right. The Sixth Amendment right to effective assistance of a conflict-free attorney is so fundamental to our adversarial system of criminal justice that the Delaware General Assembly has enacted a statute which provides: "[f]or cause, the court may, on its own motion or upon the application of the Public Defender or the indigent person, appoint an attorney other than the Public Defender to represent the indigent person at any stage of the proceedings or on appeal." [28] That statute also mandates the award of reasonable compensation to be fixed by the court and paid by the State of Delaware.[29]

### Superior Court Criminal Rule 44(c)

Both the federal courts and the Superior Court of Delaware have adopted rules of criminal procedure that require trial judges to determine whether potential con-

**22.** *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (footnote omitted).

**23.** *Id. See United States v. Brekke,* 8th Cir., 152 F.3d 1042, 1045–46 (1998); *United States v. Poston,* 8th Cir., 727 F.2d 734, 738, *cert. denied* 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984) and *United States v. Bradshaw,* 7th Cir., 719 F.2d 907, 911 (1983).

**24.** *Wheat v. United States,* 486 U.S. 153, 159–60, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). *See generally* Annotations, *Circumstances Giving Rise to Prejudicial Conflict of Interests between Criminal Defendant and Defense Counsel–Federal Cases,* 53 A.L.R. Fed. 140 (1981) and *State Cases* 18 A.L.R.4th 360 (1982); *Current Developments, Conflicts of Interest: Criminal Representation,* 5 Geo. J. Legal Ethics 119 (1991); Forsgren, *The Outer Edge of the Envelope: Disqualification of White Collar Criminal Defense Attorneys under the Joint Defense Doctrine,* 78 Minn. L.Rev. 1219 (1994).

**25.** *Wheat v. United States,* 486 U.S. at 153, 108 S.Ct. 1692 (1988) and *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

**26.** *Wheat v. United States,* 486 U.S. at 159–60, 108 S.Ct. 1692. *See also Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

**27.** *Cuyler v. Sullivan,* 446 U.S. 335, 346 n. 11, 100 S.Ct. 1708 (1980) (also noting that the private bar may be less aware of potential conflicts in instances of multiple representation.).

**28.** 29 *Del. C.* § 4605.

**29.** *Id. See Browne v. Robb,* Del.Supr., 583 A.2d 949, 950 (1990). *Compare* David H. Taylor, *Conflicts of Interest and the Indigent Client: Barring the Door to the Last Lawyer in Town,* 77 Ariz. L.Rev. 577 (1995).

flicts may arise that could prejudice either defendant's right to independent counsel, when two or more criminal defendants are in effect represented by one counsel.[30] Superior Court Rule 44(c), like its federal counterpart, requires the trial judge to conduct a pretrial inquiry into the propriety of joint representation and advise both defendants of their right to separate representation.[31] Consideration of the possibility of potential conflict is mandated by Rule 44(c), regardless of whether it is raised by the defendants.

Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest in likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.[32]

The federal courts of appeals generally have held that codefendants may make knowing, voluntary and intelligent waivers of the right to conflict-free counsel when the district court complies with Federal Rule of Criminal Procedure 44(c) by: first, advising joint codefendants of possible conflicts of interest and their right to the retention or appointment of separate counsel; and second, the record reflects that the codefendants understood the potential conflicts.[33] Several federal appellate courts have established model procedures for the trial courts to ensure that a defendant has made a knowing and intelligent choice to waive the right to conflict-free counsel. In the Second Circuit, the trial judge must: advise the defendant of the right to conflict-free representation; instruct the defendant as to the dangers arising from the particular conflict; permit the defendant to confer with his or her chosen counsel; encourage the defendant to seek advice from independent counsel; allow a reasonable time for the defendant to make a decision; and determine, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risks and freely chooses to run them.[34] The Fifth Circuit requires the trial judge to conduct a hearing to ensure that the defendant: is aware that a conflict of interest exists; realizes the potential hazards to his or her defense by continuing with such counsel under the onus of a conflict; and is aware of the right to obtain other counsel.[35]

■■■ Superior Court Rule of Criminal Procedure 44(c) does not eliminate the defendant's power to waive his right to be represented by a conflict-free attorney. The Rule does, however, impose on the trial judge the duty to "promptly inquire with respect to ... joint representation [by co-defendants] and [to] personally advise each defendant of the right to the effective assistance of counsel, including separate representation." At a minimum,

---

**30.** Fed.R.Crim.P. 44(c) and Super. Ct.Crim. R. 44(c).

**31.** *See* Fed.R.Crim.P. 44(c). The federal rule was adopted in 1980. Superior Court Criminal Rule 44(b), which is identically worded, was adopted later.

**32.** Super. Ct.Crim. R. 44(c).

**33.** 27 James Wm. Moore et al., *Moore's Federal Practice* § 644.60[4][b] (3d ed.2000). *See*

1980 Advisory Committee Note to Rule 44 (reproduced verbatim at § 644 App. 04).

**34.** *Id.* summarizing *United States v. Curcio,* 2d Cir., 680 F.2d 881, 888–90 (1982). *See also Williams v. Meachum,* 2d Cir., 948 F.2d 863, 867 (1991).

**35.** *United States v. Garcia,* 5th Cir., 517 F.2d 272, 278 (1975). *See also United States v. Rico,* 51 F.3d 495, 508 *cert. denied* 516 U.S. 883, 116 S.Ct. 220, 133 L.Ed.2d 150 (1995).

the trial judge's Rule 44(c) colloquy with each defendant must take place on the record early in the pretrial proceedings and certainly before the day of trial.[36]

At this time, we do not adopt any particular procedure with regard to the type of inquiry or response that is required when a trial judge engages in a dialogue with a defendant regarding the potential conflicts inherent in joint representation. As the Advisory Committee Notes state: "Rule 44(c) does not specify what particular measures must be taken. It is appropriate to leave this within the court's discretion, for the measures which will best protect each defendant's right to counsel may well vary from case to case." [37] The Advisory Committee Notes did, however, provide:

> [T]he Court should seek to elicit a narrative response from each defendant that he [or she] has been advised of his [or her] right to effective representation, that he [or she] understands the details of his [or her] attorney's possible conflict of interest and the potential perils of such a conflict, that he [or she] has discussed the matter with his [or her] attorney or if he [or she] wishes with

outside counsel, and that he [or she] voluntarily waives his [or her] Sixth Amendment protections.[38]

■ In Lewis' case, the trial judge did not comply with Superior Court Rule 44(c). The trial judge simply noted that the codefendants had separate alibi defenses and were represented by the same attorney. That observation was made in the context of deciding how many total preemptory challenges to allow for the defense during the jury selection process.

### Ineffective Assistance of Trial Counsel

■ Twenty-five years ago, before the adoption of Superior Court Criminal Rule 44(c), this Court held that joint representation of co-defendants was not a *per se* denial of effective assistance of counsel in a criminal case and that prejudice must be demonstrated, even in the absence of a waiver.[39] Today, we are persuaded by the holdings of other courts that a trial court's failure to comply with Rule 44(c) does not constitute reversible error unless that failure resulted in denial of the defendant's Sixth Amendment right to the effective assistance of counsel.[40] Accordingly, we

**36.** *Accord United States v. Brekke*, 7th Cir., 152 F.3d 1042, 1045 (1998). *United States v. Coneo–Guerrero*, 1st Cir., 148 F.3d 44 (1998).

**37.** Fed.R.Crim.P. 44, Advisory Committee Notes, 1979.

**38.** Fed.R.Crim.P. 44 Advisory Committee Notes, 1979 amendment (quoting *United States v. Garcia*, 5th Cir., 517 F.2d 272, 278 (1975)).

**39.** *Isijola v. State*, Del.Supr., 340 A.2d 844 (1975).

**40.** *United States v. Williams*, 2d Cir., 103 F.3d 1093, 1098–99, *cert. denied*, 520 U.S. 1220, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997) (mere potential conflict of interest without a showing of prejudice to defendant does not violate defendant's Sixth Amendment right to effective assistance of counsel). *See United States v. Bradshaw*, 7th Cir., 719 F.2d 907, 915 (1983) (failure to comply with Rule 44(c) is not in itself grounds for reversal). *See United States v. Reed*, 8th Cir., 179 F.3d 622, 625 (1999) (defendant must show actual conflict

or potential conflict resulting in actual prejudice); *United States v. Mooney*, 8th Cir., 769 F.2d 496, 499 (1985) (failure to comply with Rule 44, standing alone, does not mandate reversal). *See United States v. Crespo de Llano*, 9th Cir., 838 F.2d 1006, 1013 (1987) (trial court's failure to personally advise jointly represented defendants under Rule 44(c), without more, will not mandate reversal). *See United States v. Burney*, 10th Cir., 756 F.2d 787, 794 (1985) (omission of Rule 44(c) inquiry itself, not sufficient grounds for reversal); *see also United States v. Martin*, 10th Cir., 965 F.2d 839, 843 (1992)(citing *Burney*, 756 F.2d at 791, failure to comply must translate into denial of defendant's Sixth Amendment right to constitute reversal grounds). *United States v. Ramsdale*, 11th Cir., 179 F.3d 1320, 1323–24 (1999) (no actual conflict where purpose of resentencing hearing was to determine kind and quantity of drugs involved, which affected both codefendants equally); *United States v. Romero*, 11th Cir., 780 F.2d 981, 985 (1986) (technical violation of Rule 44(c) will not lead to reversal in each case-defendant must demonstrate actual conflict to be entitled to reversal).

hold that the trial judge's failure to make any Rule 44(c) inquiry does not mandate, *per se*, a reversal of Lewis' convictions.[41]

In order to establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient, and that the deficiencies prejudiced the defense.[42] When it is alleged that the ineffective assistance of trial counsel was the result of a conflict of interest, prejudice is presumed "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"[43] In defining what constitutes a "conflict of interests," the United States Supreme Court stated that "an actual, relevant conflict of interests [exists] if, during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action."[44]

"A possible conflict [is inherent] in almost every instance of multiple representation," because the interests of the defendants may diverge at almost any stage of the proceeding.[45] That is why the ABA Defense Function Standard for Conflicts of Interest provides that "the potential for conflict of interest in representing multiple defendants is so grave that ordinarily defense counsel should decline to act for more than one or several defendants except in unusual circumstances..."[46] We acknowledge that the ABA Defense Function Standards are not intended to create substantive or procedural rights.[47] Nevertheless, the professional guidance provided by several of those Standards has been commended and cited by this Court with approval.[48]

In the context of Lewis' argument, three paragraphs from the Commentary to the ABA Defense Function Standard provide compelling illustrations of the actual conflict that was present for the same attorney in representing both Lewis and Black:

During the plea negotiation stage, for example, a lawyer cannot urge identically favorable plea agreements for all of the defendants unless all are identically situated. The presence of even slight differences in the backgrounds of defendants or in their cases (e.g., one defendant held a gun while the other served as a lookout) means that strong advocacy to the prosecutor on behalf of one codefendant necessarily undermines, by comparison, the position of other defendants. Similar problems are experi-

---

**41.** The Federal Advisory Committee never contemplated that "the failure to conduct a Rule 44(c) would ..., standing alone, necessitate the reversal of a jointly represented defendant." Preliminary Draft of Proposed Amendments, 77 F.R.D. 507, 603 (1978).

**42.** *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**43.** *Id.* at 692, 104 S.Ct. 2052 (*quoting Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). *Accord Burger v. Kemp*, 483 U.S. 776, 783, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987).

**44.** *Cuyler v. Sullivan*, 446 U.S. at 356 n. 3, 100 S.Ct. 1708.

**45.** *Id.* at 348, 100 S.Ct. 1708. *See generally* Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interests and the Professional Responsibilities of the Defense Attorney*, 62 Minn.L.Rev. 119 (1978).

**46.** ABA Standards for Criminal Justice: *Defense Function, Conflicts of Interest* § 4–3.5 (3d ed.1993).

**47.** *Id. See* Commentary to ABA Standards for Criminal Justice: *Defense Function, The Function of the Standards*, § 4–1.1 (3d ed.1993).

**48.** *See Pennell v. State*, Del.Supr., 602 A.2d 48 (1991); *State v. Bennefield*, Del.Supr., 567 A.2d 863 (1989); *Weddington v. State*, Del.Supr., 545 A.2d 607 (1988); *Michael v. State*, Del.Supr., 529 A.2d 752 (1987); *Grayson v. State*, Del.Supr., 524 A.2d 1 (1987); *Brokenbrough v. State*, Del.Supr., 522 A.2d 851 (1987); *Hughes v. State*, Del.Supr., 437 A.2d 559, 567 (1981); *Hooks v. State*, 416 A.2d 189 (1980); *Sexton v. State*, Del.Supr., 397 A.2d 540 (1979).

enced by counsel during trial, whether the issue is deciding what questions to ask on direct examination or cross-examination, which witnesses will testify, or what evidence to introduce. Questions, testimony, or evidence that are particularly beneficial to one defendant may indirectly reflect adversely upon other defendants. The difficulty for an attorney is especially acute when it comes to arguing the cases of multiple defendants to the fact finder. Unless the prosecutor's evidence against the defendants and their defenses is identical, attempts by counsel to exploit weaknesses in evidence against one defendant necessarily make the case against other defendants appear stronger.

Moreover, the fact of multiple representation means that the statements of the accused to the lawyer are not given in full confidence. Defense counsel must confront each defendant with any conflicting statements made by others in the course of planning the defense of the cases. In this situation, the lawyer may have to "judge" the clients to determine which one is telling the truth, and the lawyer's role as advocate is thereby undermined for one, if not all, of the defendants.

If defense counsel does somehow manage to survive the pretrial, trial, and plea stages without confronting either an implicit or explicit conflict in the representation of multiple defendants, conflict problems are still likely to be encountered at sentencing. Since the backgrounds of codefendants invariably differ to some degree, an attorney for multiple defendants must be exceedingly careful in arguments related to sentencing, lest it appear that the attorney is favoring one defendant for leniency in contrast to others. At sentencing, just as at all other stages of criminal proceedings, a defendant is entitled to a

lawyer who will aggressively advocate his or her own cause and who is able to do so without concern for the effects of that representation on any other codefendants.[49]

▮ The record reflects that there was a disparity in the quantum of the State's evidence against Lewis and Black. At trial, both Parks and Selby identified Black as the armed assailant. Only Selby, however, identified Lewis as the second perpetrator. Selby acknowledged that the second perpetrator never spoke and was masked and hooded at all times. Selby's identification was based on his brief view of small portions of the second perpetrator's ski-masked face and hooded head in low light conditions. The State does not dispute Lewis' contention that there was a disparity in the quantum of evidence against each defendant at trial.

Given the disparity in the State's evidence against Lewis and Black, the conflict for one attorney representing them both was manifest *ab initio*, e.g., during the pretrial case review and plea negotiation stages. That conflict was exacerbated at trial since the State's evidence against Lewis and Black was not identical. Any attempt to exploit the weakness in the State's identification evidence against Lewis would necessarily enhance the apparent strength of the identification evidence against Black.

▮ Lewis and Black asserted separate alibi defenses. To the extent that the strength of the State's case against Black undermined the credibility of Black's alibi defense, it had the potential for "spilling over" and undermining the jury's assessment of Lewis' alibi defense. If Black's statement at sentencing was truthful about Lewis' innocence and his own guilt, it also meant that he was not candid with his attorney in asserting an alibi defense.

---

**49.** Commentary to ABA Standards for Criminal Justice: *Defense Function, Conflicts of* *Interest,* § 4–3.5 (3d ed.1993).

In *Holloway*, the United States Supreme Court stated "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing ... [A] conflict may ... prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another." [50] Even if there had been no other conflicts, since Black had a gun during the crime and the second assailant was unarmed, the ability to argue a lesser sentence for Lewis was compromised by dual representation. [51]

The record reflects that either the disparity in the strength of the State's case against Lewis and Black or the relative merits of each alibi defense apparently caused concern for the jury, even in the absence of separate independent legal representation. In a note sent out during deliberations, the jurors asked the trial judge whether they could find Black guilty of conspiracy if they believed that he did not conspire with Lewis. One logical explanation for such a question is that the jury had no doubt concerning the identification of Black as one of the perpetrators but had some doubt about the participation of Lewis.

### Conflict and Prejudice

We have no doubt that the assistant public defender who represented Lewis and Black at trial proceeded in good faith. Nevertheless, Lewis has demonstrated there was an actual conflict in the dual representation at trial by the same assistant public defender. The record reflects a divergence between Lewis' interests and Black's interests with regard to material factual and legal issues that should have resulted in separate courses of action. [52] Lewis has also demonstrated prejudice because of what the record reflects his attorney did not do on his behalf. [53] Consequently, in the absence of a valid Rule 44(c) waiver on the record before the trial judge, we hold that Lewis' Sixth Amendment right to have the effective assistance of an appointed conflict-free trial attorney was violated. [54]

### Conclusion

The judgments of the Superior Court are reversed. This matter is remanded for a new trial.

---

50. *Holloway v. Arkansas*, 435 U.S. at 489–90, 98 S.Ct. 1173.

51. Several courts have held that degrees of culpability are relevant when examining potential conflicts of interest. *United States v. Martin*, 10th Cir., 965 F.2d 839, 842 (1992); *Cf.*, *Camera v. Fogg*, 2d Cir., 658 F.2d 80, 89, *cert. denied*, 454 U.S. 1129, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981).

52. *See Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citation omitted). *See also Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *Accord Burger v. Kemp*, 483 U.S. 776, 783, 107 S.Ct. 3114 (1987).

53. *See Holloway v. Arkansas*, 435 U.S. at 489–90, 98 S.Ct. 1173. *See United States v. Martin*, 965 F.2d 839 (1992).

54. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).