IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DANIEL SANTUCCI, | § | |
| | § | No. 7, 2019 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID: 1705002306(N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: October 30, 2019
Decided: November 19, 2019

Before **SEITZ,** Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

**O R D E R**

This 19th day of November, 2019, after careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) On April 6, 2017, Daniel Santucci abducted a four-year-old girl from her front yard while she was playing with friends.[1] He pulled her into his car and sped off. After molesting and raping the girl, Santucci threw her into a pond and left. Fortunately, the girl managed to swim ashore where a passerby found her. Santucci fled the state and was later apprehended in Florida. A grand jury indicted Santucci on charges of attempted murder in the first degree, kidnapping in the first degree,

---

[1] Because Santucci's charges were resolved by plea and there was no trial, the underlying facts are taken from the State's comments at sentencing.

two counts of rape in the second degree, three counts of unlawful sexual contact in the first degree, and possession of child pornography.

(2)     Santucci's court-appointed attorney was employed by the Public Defender's Office of the Office of Defense Services (ODS).[2] Representing the State were two Deputy Attorneys General, one of whom's wife also worked for ODS. Because Santucci was unwilling to waive any potential conflicts created by the prosecutor's marital relationship with an ODS lawyer, he filed a motion asking the court to appoint conflict counsel.

(3)     In its response to Santucci's motion, the State reported that ODS had "advised the State that [the prosecutor's wife had] not accessed the (ODS) database and [had] no involvement in the case."[3]

(4)     After a hearing, the Superior Court denied the motion.  The court, following a 2015 Superior Court opinion[4] that addressed identical circumstances, held that there was no conflict and suggested that an ethical wall could be implemented by ODS "that require[d] that [the prosecutor's wife] sign a document saying that she will not access the files and she won't discuss the case."[5] The court also ordered the prosecutor to refrain from discussing the case with his wife.

---

[2] The Office of Defense Services has three divisions:  Central Administration, the Public Defender's Office, and the Office of Conflict Counsel.
[3] App. to Answering Br. B3 (hereinafter "B__").
[4] *State v. Swanson*, 2015 WL 5781242 (Del Super. Ct. Sept. 29, 2015).
[5] B29–30.

(5) Santucci eventually pleaded guilty to attempted murder, rape in the second degree, and kidnapping. In his written plea agreement and again during the plea colloquy, Santucci expressed dissatisfaction with his lawyer's representation. But when pressed by the court to explain his concerns, Santucci's response was limited to a vague complaint relating to his lawyer's (i) failure to provide him with materials that were subject to a protective order and (ii) inability to persuade the prosecution to drop the attempted murder charge. Notably, Santucci did not raise the purported conflict of interest that prompted his earlier motion and that is the sole issue in this appeal. Moreover, when asked specific questions during the colloquy about his lawyer's representation, Santucci confirmed that his lawyer discussed with him the evidence that the State had with respect to each charge, the strengths and weaknesses of his defense, and the probable consequences of a trial. Santucci also acknowledged that his lawyer responded satisfactorily to any "issues or concerns [he] had] with the plea agreement,"[6] that no one threatened or forced him to plead guilty, and that he understood the rights that he was waiving by entering the plea. Based on Santucci's answers to the court's detailed questioning, the court accepted Santucci's plea as knowing, intelligent, and voluntary. As a result, Santucci was sentenced to life imprisonment with various levels of probation, and this appeal followed.

---

[6] *Id.* at 9–10.

(6)     Determining whether a conflict of interest existed is a question of law and, therefore, reviewed *de novo*.[7]  We also review claims alleging an infringement of a constitutional right *de novo*.[8]

(7)     "The Sixth Amendment right to effective assistance of counsel provides for representation that is 'free from conflicts of interest or divided loyalties.'"[9]  To overturn a conviction based on a conflict of interest, the defendant must establish that (a) counsel had an actual conflict, and (b) the conflict adversely affected counsel's representation.[10]  The mere "possibility of a conflict is insufficient to impugn a criminal conviction."[11]

(8)     Santucci contends that "the marital relationship between the prosecutor and a partner of the appointed counsel for the defendant 'created the appearance of having compromised and limited the defendant's constitutional right to effective assistance of counsel.'"[12]

(9)     Rule 1.7(a) of the Delaware Lawyers' Rules of Professional Conduct states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest."  A concurrent conflict of interest exists if:

---

[7] *Hitchens v. State*, 931 A.2d 437, 2007 WL 2229020, at *2 (Del. July 26, 2007) (Table); *see also Kent v. State*, 135 A.3d 79, 2016 WL 1039125, at *4 (Del. Mar. 11, 2016) (Table).
[8] *Williams v. State*, 56 A.3d 1053, 1055 (Del. 2012).
[9] *Lewis v. State*, 757 A.2d 709, 714 (Del. 2000).
[10] *Runyon v. State*, 968 A.2d 492, 2009 WL 10670694, at *2 (Del. Mar. 4, 2009) (Table) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).
[11] *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).
[12] Opening Br. 7–8.

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.[13]

Generally, when lawyers are associated in a firm,[14] "none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9."[15]  But when the "prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm," the conflict will not be imputed to the rest of the firm.[16]  Indeed, Comment 11 under Rule 1.7 speaks specifically to the case before us:  "The disqualification arising from a close family relationship is personal and ordinarily is not imputed to members of firms with whom the lawyers are associated."[17]

(10)   Although the Public Defenders Office is a firm under the Rules of Professional Conduct, the alleged conflict here is based solely on the close familial relationship between the Deputy Attorney General and an employee of the Public Defenders Office who has no other affiliation with the case.  Accordingly, such a

---

[13] DEL. R. PROF. CONDUCT 1.7(a)(1)&(2).
[14] "[L]awyers employed in a legal services organization" constitute a "firm."  DEL. R. PROF. CONDUCT 1.0(c).
[15] DEL. R. PROF. CONDUCT 1.10(a).
[16] *Id.*
[17] DEL. R. PROF. CONDUCT 1.7 cmt. 11.

personal conflict should not be imputed to other lawyers employed by the Public Defenders Office.

(11) Santucci argues that, because his appointed counsel had a conflict of interest, his constitutional right to effective assistance of counsel was violated. But Santucci does not say how his representation was adversely affected. He does not claim that his trial counsel's performance fell below an objective standard of reasonableness, nor does he suggest that the outcome would have been different if he had been appointed new counsel (e.g., pushing for trial instead of a plea). He merely states that "the marital relationship between the prosecutor and a partner of the appointed counsel for the defendant 'created the appearance of having compromised and limited the defendant's constitutional right to effective assistance of counsel.'"[18] We agree with the conclusion the Superior Court expressed upon taking Santucci's plea that there was no "failure of representation in this case."[19]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[18] Opening Br. 7–8.
[19] Plea Proceeding at 22.