SUPERIOR COURT
OF THE

RICHARD F. STOKES
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

November 20, 2014

Tory Hess
SBI# 006
SCI
P.O. Box 500
Georgetown, DE 19947

Patrick J. Collins, Esquire
Albert J. Roop, V, Esquire
8 East 13th Street
Wilmington, DE 19801

RE: *State of Delaware v. Tory R. Hess*, Def. ID# 0907021053 (R-1)

DATE SUBMITTED: August 27, 2014

Dear Mr. Hess, Mr. Collins and Mr. Roop:

Pending before the Court is the motion for postconviction relief which defendant Tory Hess filed pursuant to Superior Court Criminal Rule 61 ("Rule 61").[1] Also pending is postconviction counsel's motion to withdraw, filed pursuant to Rule 61(e)(2). Finally, outstanding is defendant's request for an evidentiary hearing. This is my decision denying the postconviction relief motion, denying the request for a hearing, and ruling the motion to withdraw is moot.

---

[1]The applicable version of this rule is the one in effect on May 6, 2014, a copy of which is enclosed herein.

1

On July 22, 2009, defendant killed Rodney J. Long, caused serious physical injuries to Kay Long and Virginia Higgins, and caused physical injury to Diana Sanchez. The prosecutor for the State of Delaware ("the State") detailed this killing and maiming at defendant's sentencing:

> Your Honor, the State attempted or tried to, in order to make a recommendation today, look at similar cases that I have had and [sic] in Kent County and others. I haven't been able to find one this egregious. This defendant traveled a 29-mile stretch of roadway from the Dover Air Force Base to just south of Milton at speeds well over 100 miles and [sic] hour. His air bag control module showed seconds before his air bags deployed his vehicle was traveling 111 miles an hour and then had dropped down to 109 as the air bags were deploying. The officer using the 911 calls and the locations of the people was able to come up with the defendant traveled that 29 miles at an average speed of 95 miles an hour. There were 20 witnesses that I interviewed after the collision that had called 911.
>
> THE COURT: A total of 26.
>
> MR. BUCKLIN: A total of 26. Some of the fact witnesses were at the scene. There were at least 20 that called in in various ways and said they had never seen anybody drive like this before.  They talked about passing between cars, going three wide with Mr. Hess in the middle, passing on the dotted line in the middle of the roadway, passing on the right shoulder and, at one point, passing a car with his left tires leaving the roadway in the grass median. All of them, or at least the majority of those, commented that was something they had never, ever seen; it was too scary; they had never seen anything like that or just never seen anyone drive that way.
> In searching my memory, I have not had a case similar to this. The defendant's prior record, Your Honor, he had every warning sign and he had every sign that he was spiraling out of control. In 2008, he had a DUI reduced to reckless driving. In 2009, just two and-a-half months or two prior to this, on April 21st in Kent County, he [sic] an accident, put that same Corvette, I believe the same Corvette, into a ditch. He had a .99 BAC. He said at that point he had two drinks prior to driving. In this case, he was interviewed by presentence and his statement was that he had two drinks prior to this.
> The defendant that night, by his actions, this was inevitable. And leading up to that night, the defendant getting into an accident, intoxicated, it was inevitable. He had prior drug treatment. He has been under the care of psychiatrists in the past. And the drug treatment, I can only say he ignored it because he continued to use afterwards. The one psychiatrist, he forged a prescription and was discharged from their services. He went to the next one. It has been noted it was his voluntary intoxication that day that led to this, whether he was over medicated or for mixing

2

the alcohol with those pills was a decision that he should have never made.[2]

Defendant was speeding down Route 1 in Kent and Sussex Counties with a blood alcohol level of .080 in violation of 21 *Del. C.* § 4177(a).[3] He also tested positive for Clonazepam and Alprazolam, which were prescribed.[4]

Defendant was arrested on the charges of manslaughter; vehicular assault in the first degree (2 counts); vehicular assault in the second degree; driving while suspended or revoked; aggressive driving; menacing; and driving under the influence. The State considered indicting defendant on a charge of murder in the second degree. However, after talking with the victims and their families, it offered defendant a pre-indictment plea to manslaughter and vehicular assault in the first degree.

On February 1, 2010, defendant entered into the plea. By signing the Truth-in-Sentencing Form ("TIS Form"), he affirmed the following facts:

* He was freely and voluntarily pleading guilty;

* He was not threatened or forced into pleading guilty;

* He understood he was waiving his Constitutional trial rights;

* He understood the potential prison sentence;

* He was satisfied with his trial counsel's representation of him;

* He understood all of the information contained in the forms; and

---

[2]Transcript of March 26, 2010, sentencing at 6-8, Docket Entry No. 13.

[3]Medical Examiner's Report located at Appendix to Postconviction Counsels' Motion to Withdraw at A-121-24.

[4]*Id.*

* His answers were truthful.

The plea called for sentencing after the Investigative Services Office produced a presentence report ("PSI"). In the TIS Form, defendant acknowledged that he was facing a sentence of up to 28 years at Level 5.

During the plea colloquy, defendant confirmed the following facts:

* He had had enough time to go over his case with his attorney.

* He was satisfied with his attorney's representation and had no complaints.

* He had read and signed both the TIS Form and Plea Agreement and had made the checkmarks on the TIS Form.

* His attorney explained the information in the two forms to him.

* His answers were true.

* No one forced him to enter the plea.

* His attorney had explained each element of the offenses to which he was pleading guilty.

* His attorney had reviewed the evidence and the penalties of the law with him.

* He understood the minimum and maximum penalties he was facing on each count.

* He understood the sentencing judge was not bound by the TIS guidelines and he could be sentenced to 28 years in jail.

* He was freely and voluntarily giving up his trial rights and pleading guilty.

The Court found his pleas "to be a knowing, voluntary and intelligent decision...."[5] Pursuant to the plea agreement, a PSI was ordered and a report was prepared.

---

[5]Transcript of February 1, 2010 Proceedings at 8, Docket Entry No. 16.

4

Defendant's sentencing took place on March 26, 2010.

Before sentencing, the defense submitted a report from Stephen Mechanick, M.D. of the results of his psychiatric examination of defendant.[6] The doctor explains defendant's addiction history, which began after he treated for cancer. Most significantly, Dr. Mechanick explains that one of his doctors, Dr. Chris Abad-Santos, prescribed inappropriate drugs in light of his addiction history. Specifically, he states:

> Despite being aware of Mr. Hess's substance abuse problems, Dr. Abad-Santos also prescribed Xanax... and Klonopin.... These medications are usually contraindicated for people who have addiction problems. The addition of Xanax and Klonopin to Mr. Hess's medications was like throwing gasoline on a fire. Prescribing these medications increased the intensity of Mr. Hess's addiction by adding prescribed medications to the mix. These medications increased the intoxicating effects of the opiates and alcohol that Mr Hess was already abusing.[7]

He further explains that Dr. Abad-Santos did not monitor defendant and his addiction problems worsened. Before the accident, defendant was depressed and suffered severe anxiety.

Defendant reported to Dr. Mechanick that his car was run off the road by two other cars and he tried to accelerate away from the cars. He maintains he accidentally rear-ended the victims' vehicle. The doctor noted that if defendant was not being chased by these cars, this recollection would indicate he was delirious during this time. "Mr. Hess's delirium would have been caused by the combined effect of his alcohol consumption, narcotic use, and prescribed benzodiazepines."[8] Defendant did not remember driving recklessly or speeding.

The doctor opined that defendant had psychiatric diagnoses of major depression, anxiety

---

[6]Appendix to Postconviction Counsels' Motion to Withdraw at A-170-72.

[7]*Id.* at A-171.

[8]*Id.* at A-172.

5

disorder not otherwise specified, opiate abuse, alcohol abuse, marijuana abuse and prescription benzodiazepine abuse (Xanax). It was his further opinion:

> that the prescription Xanax and Klonopin that Mr. Hess was taking at the time of the charges worsened the intoxication that he experienced on the evening of the accident. It appears that Mr. Hess experienced a blackout during part of the time that he was driving. His intoxication with alcohol, narcotics, and prescription benzodiazepines (Xanax and Klonopin) contributed to Mr Hess's intoxication at the time of the current charges.[9]

Thus, Dr. Mechanick opined that the prescribed medications mixed with his alcohol worsened his voluntary intoxication.

The prosecutor disputed defendant's contention he was chased by two Honda Civics. He noted that there is not much of a gap when he did not have information about the defendant's activities before the accident. Witnesses saw him accelerating away from a BMW, but not a Honda Civic and there was no report of a Honda Civic chasing him.

At the sentencing, defendant's attorney represented how remorseful defendant was. He asked the Court for mercy. Defendant spoke. He said he was sorry and remorseful and he took full responsibility for what he did.

The State sought a sentencing of between 10 and 31 years, well beyond the TIS guidelines because of defendant's excessive cruelty, the defendant's custody status at that time, the fact that his license had been suspended, his blood-alcohol level, and his lack of amenability to lesser restrictive sanctions, particularly, his lack of amenability to previous drug treatments.

The Court imposed sentence, noting it had read the presentence report, attachments to the report, and Dr. Mechanick's letter, and it had considered counsel's comments, defendant's

---

[9]*Id.* at A-172.

6

comments, and the victims' granddaughter's comments. The Court stated:

> The act for which you stand convicted resulted in manslaughter and vehicular assault. Your actions were terribly reckless. The facts show very clearly that you are a person who is addicted to pain medication, that you are a person who knew not to drink with medication because the medication would impair your judgment substantially such that you would be a reckless and dangerous driver, that you did, in Dover, go to a tavern, have at least two drinks, and you knew at the time with the medication you had taken this would put you into a deadly position, that you were driving a Corvette with a companion, that you left the establishment in Dover and you drove Highway Route 1 south towards the beach and as you were doing that, you were driving at speeds in excess, at times, of over 100 miles an hour, that you were driving in such a reckless fashion for a substantial period of time that you were passing southbound traffic on the right-hand side and going back, passing traffic on the left-hand side, weaving back and forth, driving, again, at speeds in excess of 100 miles per hour. You were driving the Corvette in such a manner, in a reckless deadly fashion, you were much like a speeding bullet, a speeding lethal bullet is how your actions were. The bullet ended in the death of one person, a grandfather, ended in a substantial loss of the physical and emotional well being of two other victims, the family of victims in the car whose lives have been, for the most part, destroyed by what you did. You knew better. The blood alcohol was .08.
>
> I am finding that there are aggravating factors in this case. At the time you chose to drive that Corvette, your license had been taken from you. You should not had [sic] been driving. You had been picked up for driving under the influence. You had a prior reckless driving incident. You had absolutely no business getting behind the wheel of that Corvette. Your custody status is an aggravating factor.
>
> I also find that there is a guideline which calls for manslaughter, up to five years. It is a guideline and should also be departed from because of one, undue depreciation of the offense and what you did. And also given your history and background, I think there is a lack of amenability to lesser sanctions. Then a departure would be called for with the sentencing that I intend to give. The mitigating factors, they are far outweighed by the aggravating ones. And even looking at Dr. Mechanick's letter, I mean, it's clear you knew better. You were taking these drugs. You were intoxicated. You blacked out. That really doesn't help you at all, in my view.[10]

As to the manslaughter conviction, the Court sentenced defendant to 25 years at Level 5

with credit for time served, suspended after 12 years and upon successful completion the Key

_____

[10]Transcript of March 26, 2010, sentencing at 13-15, Docket Entry No. 13.

Program for one year at Level 4, Residential Substance Abuse Treatment Program ("RSATP"), and upon successful completion of the Level 4, RSATP, the balance is suspended for 2 years at Level 3 aftercare, to be held at Level 5 until space is available at Level 4. As to the vehicular assault in the first degree conviction, defendant was sentenced to Level 5 for three years, suspended for 2 years at Level 3 probation.

Defendant did not appeal. On June 22, 2010, defendant moved for modification of his sentence.[11] The Court denied the motion on the ground that the sentences imposed were appropriate in light of the following:

> Mr. Hess has a significant history of prescription drug and alcohol abuse. As indicated in the sentencing order, Mr. Hess had a .08% blood alcohol content. Even though he participated in treatment programs, he continued to use prescription drugs with alcohol while recklessly driving over 95 mph on July 22, 2009. Mr. Hess displayed a blatant disregard for the lives of those driving south on Route 1 that day. One person was killed and two others seriously injured by his reckless behavior behind the wheel of a car.[12]

Defendant did not appeal this decision. Defendant did not file his postconviction motion until September 12, 2013. He was appointed postconviction counsel.[13] Postconviction counsel have moved to withdraw, arguing there is no ground for postconviction relief which they may ethically advance. Trial counsel filed an affidavit in response to defendant's claims.[14] Defendant

---

[11]Docket Entry 9.

[12]Docket Entry 12.

[13]Defendant contacted Natalie S. Woloshin, Esquire, about retaining her to represent him. Ms. Woloshin sent him a letter dated May 1, 2013, setting forth areas of ineffective assistance of counsel. Ms. Woloshin has not entered her appearance in this case. The Court ignores this May 1, 2013, letter.

[14]Defendant's parents have filed an April 28, 2014, letter in response to this affidavit, which is Docket Entry No. 40. It is inappropriate for them to participate in the pending

has submitted his arguments.[15] The State has filed its opposition to defendant's postconviction motion.

Defendant's arguments claim ineffective assistance of counsel on the grounds listed below.

* Trial counsel did not determine whether defendant was competent to enter the plea.

* Trial counsel failed to note on the plea form defendant's previous hospitalizations and medications taken during his incarceration and these omissions "foreclosed the ability of the court to have a colloquy with him about his understanding of the plea agreement."[16]

* Trial counsel's submission of Dr. Mechanick's report resulted in an aggravation of defendant's sentence rather than a mitigation. Defendant argues:

> Trial counsel knew or should have known that the report/letter prepared by Dr. Mechanick contained erroneous, inaccurate and misleading information. In addition, trial counsel knew or should have known that Dr. Mechanick did not possess all of the necessary information in order to render an appropriate opinion regarding defendant's sentencing. Trial counsel did not obtain and provide to Dr. Mechanick any of the DOC records, a list of his medications at the prison, the records of his previous treatment and hospitalizations. The report provided by trial counsel to the Court was determined by the Court to contain information that actually **aggravated** defendant's circumstances rather than mitigate them. Such failures by trial counsel affected the outcome of Dr. Mechanick's report and ultimately the **sentence** of the Court. [Emphasis in original].[17]

* Trial counsel had a conflict with representing defendant when he was also representing

proceedings, and the Court ignores this letter.

[15]Appendix to Postconviction Counsels' Motion to Withdraw at A-197-211.

[16]Docket Entry 18.

[17]*Id.* I note that defendant met with the doctor before he issued the report. Obviously, defendant had the opportunity to tell the doctor everything about his treatments and drugs that he thought was important.

9

Dr. Abad-Santos. Dr. Abad-Santos' treatment exacerbated his symptoms, "likely causing this crime to have occurred."[18] Trial counsel did not inform defendant that he was representing both him and Dr. Abad-Santos and defendant did not consent to this representation which resulted in a conflict of interest.

* Trial counsel failed to investigate and verify every aspect of the State's case. Specifically:

> Trial counsel knew he did not posses [sic] discovery evidence from the State before negotiating a plea agreement. State's discovery evidence was hand delivered to Trial Counsel on the same day defendant entered his plea in open court. Trial counsel failed to investigate and/or interview crime scene witnesses including failure to hire crash reconstruction and toxicology experts to evaluate State's data.[19]

* Trial counsel coerced defendant into signing the plea based on a threat from the prosecutor.

I note that defendant has attempted to attack the evidence against him. Defendant's guilty plea constitutes a waiver of all constitutional trial rights and the right to challenge any alleged violations of his constitutional rights or to challenge any of the evidence that would have been presented against him at trial.[20] Thus, the claims of inaccuracies in the evidence have been waived by entry of the plea.

The coercion claim, in the end, is not an ineffective assistance of counsel claim even though defendant throws in the "ineffective assistance of counsel" label. Instead, it is a claim that

---

[18]*Id.*

[19]*Id.*

[20]*Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003).

10

defendant was forced to enter the plea because the prosecutor threatened to charge him with murder in the second degree if he did not enter the plea. That claim is time barred[21] as well as barred because defendant did not assert it in a direct appeal.[22]

Defendant has not shown cause for relief from the procedural default and prejudice from a violation of his rights.[23] Furthermore, he has submitted nothing to establish a miscarriage of justice.[24]

Even if the Court ruled that defendant had overcome the procedural bars, it would not grant relief on this claim. The transcript establishes that defendant entered the plea knowingly and voluntarily. The Court and the paperwork clearly set forth every element of the plea. Furthermore, defendant confirmed that by pleading guilty, he understood he was giving up all of his trial rights, that no one had forced him to enter the plea, that he was guilty of the charges to which he pled, that he had had time to consult with his attorney and had gone over all aspects of the plea with his attorney, and that he was satisfied with his attorney's representation. Defendant

---

[21]Rule 61(i)(1) (Since 2005, Rule 61 has required the filing of a motion for postconviction relief within 1 year after the judgment of conviction).

[22]*Palmateer v. State,* 918 A.2d 339, 2007 WL 37772, *1 (Del. Jan. 5, 2007); Rule 61(i)(3) ("Any ground for relief that was not asserted in the  proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows (A) Cause for relief from the procedural default and (B) Prejudice from violation of the movant's rights.")

[23]*Id.*

[24]*Palmateer v. State, supra;* Rule 61( i)(5) ("The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.")

11

is bound by his testimony prior to the acceptance of the plea and by his answers on the TIS Form in the absence of clear and convincing evidence to the contrary.[25] He has not presented any evidence, let alone clear and convincing evidence, of any claim to the contrary. Finally, "the United States Supreme Court has determined that a defendant's decision to plead guilty as a means to avoid additional prison time does not amount to 'coercion.'" [26] Thus, the claim of coercion fails.

I now turn to the ineffective assistance of counsel claims.

Those claims, too, are time-barred, as defendant has filed his motion well beyond the one year period from the finality of his judgment of conviction.[27] In order to overcome that bar, defendant must show an exception to the bar exists. In this case, defendant asserts ineffective assistance of counsel and thereby seeks to overcome the bar by establishing the miscarriage of justice exception.

Before considering the ineffective assistance of counsel claims, I set forth the legal framework for those considerations.

First, the claims must not be vague or conclusory; they must be clear and specific.[28] If a defendant makes a clear and non-conclusory, claim, then:

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy

---

[25]*Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).

[26]*Edwards v. State*, 941 A.2d 1018, 2007 WL 4374237, *1 (Del. Dec. 17, 2007) (citing *Brady v. United States*, 397 U.S. 742, 751-52 (1970).

[27]The revision of Rule 61 in 2013 did not remove the time bar. *State v. Waller*, 2013 WL 7158043 (Del. Super. Nov. 13, 2013).

[28]*Younger v. State*, 580 A.2d 552, 555 (Del. 1990).

t     the familiar two-part test of *Strickland v. Washington*. FN 15 "In the context of a guilty plea challenge, *Strickland* requires a defendant to show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) counsel's actions were so prejudicial that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." FN 16.

> FN 15 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> FN 16 *Somerville v. State*, 703 A.2d 629, 631 (1997) (internal quotation marks omitted) (citing *Albury v. State*, 551 A.2d 53 (1988)).[29]

As to the first prong, there is a strong presumption that trial counsel's representation was reasonable.[30] The second prong of *Strickland* requires defendant to show how counsel's error resulted in prejudice.

> "Mere allegations of ineffectiveness will not suffice. A defendant must make specific allegations of actual prejudice and substantiate them." The "failure to state with particularity the nature of the prejudice experienced is fatal to a claim of ineffective assistance of counsel." In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." [Footnotes and citations omitted.].[31]

As to the claim regarding his competency, defendant has failed to establish his claim. Defendant's only "evidence" regarding his incompetency is that he suffered mental health issues over the years, that he attended a week-long day treatment program at Rockford, and that he was taking prescribed medications for anxiety at the prison. Contrary to his contentions, the record shows that trial counsel was aware of his previous mental health issues. The Court was aware of

---

[29]*Purnell v. State*, 2014 WL 4536558, *2 (Del. Sept. 12, 2014).

[30]*Strickland v. Washington*, 466 U.S. at 689-90.

[31]*Hoskins v. State*, 2014 WL 4722716, *3 (Del. Sept. 22, 2014).

13

defendant's treatment at Rockford by way of Dr. Mechanick's report. The Court also was aware of his mental health issues as well as his substance abuse issues from Dr. Mechanick's report as well as the PSI. The record shows that at the time he entered his plea, he confirmed that he understood the charges to which he was pleading guilty and the sentence he was facing, that he was freely and voluntarily pleading guilty, that he understood all of the trial rights he was giving up, and that he had discussed the matter with his counsel. He had no difficulty answering any questions. Absent clear and convincing to the contrary, he is bound by his representations in the TIS guilty plea form and his statements to the Court.[32] Defendant has not submitted any evidence, let alone clear and convincing evidence, that his mental health or medications rendered his guilty plea involuntary. This claim fails.

Defendant argues trial counsel was ineffective with regards to Dr. Mechanick's report. Defendant maintains trial counsel failed to provide Dr. Mechanick with all the information he needed to reach an opinion regarding defendant's mental health.[33] Defendant does not detail what missing information would have changed Dr. Mechanick's opinion. This claim fails because it is conclusory.[34]

Defendant complains that Dr. Mechanick's report was inaccurate and the report hurt him and should not have been provided to the Court. This argument requires second-guessing of a trial strategy that was reasonable under the facts of this case. Defendant had no defense in this

---

[32]*Sartin v. State*, 2014 WL 5392047 (Del. Oct. 21, 2014).

[33]Defendant maintains the information in the report, much of which came from him, was incomplete and not completely correct.

[34]*Younger v. State, supra.*

case. Voluntary intoxication is not a defense,[35] nor is intoxication a mental illness.[36] Through Dr. Mechanick, trial counsel attempted to obtain some reasoning as to "why someone like Mr. Hess, who has no recollection of the 24 miles of erratic driving, would do such in reckless conduct (i.e.: ignoring his driving restrictions; combining drugs and alcohol and loss of recollection)."[37] Dr. Mechanick's report, which can be read to have shifted some of the blame for defendant's situation to inappropriate treatment by Dr. Abad-Santos, was the only mitigating evidence available. In other words, this was the best that trial counsel could do for defendant. This Court reviewed the report and made its decision on the sentencing using many factors. The report did not harm defendant. Thus, defendant cannot show prejudice with regard to Dr. Mechanick's report. The report did not help him, either. This Court was aware of his treatment issues and mental health issues, as well as the additional problems Dr. Abad-Santos' treatment caused for defendant. However, this Court did not consider this mitigating evidence to be of much significance. What mattered was defendant's actions that day. Defendant was not supposed to be driving, period. Defendant was well aware of the problems alcohol caused him in light of the medications he was taking. His drinking alcohol to the point of impairment was completely voluntary and completely inexcusable. In the end, his mental health issues are not significant

---

[35] 11 *Del. C.* § 421 ("The fact that a criminal act was committed while the person committing such act was in a state of intoxication, or was committed because of such intoxication, is no defense to any criminal charge if the intoxication was voluntary.").

[36] 11 *Del. C.* § 422 ("Evidence of voluntary intoxication shall not be admissible for the purpose of proving the existence of mental illness, mental defect, serous mental disorder or psychiatric disorder within the meaning of § 401 of this title.").

[37] Appendix to Postconviction Counsels' Motion to Withdraw at A-174.

15

enough to call for a reduction in his sentence, as that is what he seeks. In the end, the blame for what occurred rests on defendant's decision to voluntarily consume alcohol, to drive illegally, and to drive recklessly. The aggravating factors far outweighed any mitigation which defendant attempts to insert. This claim fails because the trial strategy was reasonable and because defendant did not suffer prejudice from the report.

Defendant maintains trial counsel had a conflict of interest by representing Dr. Abad-Santos at the same time as he represented defendant. Defendant is required to show that "'an actual conflict of interest adversely affected [trial counsel's] performance.'"[38] Defendant has not made that showing. Had trial counsel refused to submit Dr. Mechanick's report because of the identified problems with Dr. Abad-Santos' treatment, then defendant would have a claim. That is not what happened. Trial counsel submitted the report, even though it painted Dr. Abad-Santos in a poor light. Any conflict that existed did not affect trial counsel's performance on behalf of defendant.[39] Additionally, defendant has failed to show that he would have gone to trial on a murder in the second degree charge rather than take the plea he took in light of trial counsel's representation of Dr. Abad-Santos. This claim fails.

Defendant contends trial counsel was ineffective because he negotiated a plea without obtaining evidence. The facts show otherwise. The prosecutor explains that trial counsel met with him months before the plea and reviewed the 911 calls, witness reports, airbag control

---

[38]*Pettiford v. State*, 21 A.3d 597, 2011 WL 2361383, * 2 (Del. June 13, 2011), *quoting Lewis v. State*, 757 A.2d 709, 718 (Del. 2000).

[39]This Court is not finding a conflict existed. There are factual questions regarding whether trial counsel informed defendant of this conflict and whether defendant waived it. The Court addresses the prejudice prong only.

16

module data, and toxicology report. The records show trial counsel had, as of the day of the plea, tremendous amounts of discovery from the State.[40] Defendant has not pointed to any "evidence" of which trial counsel might not have known which would have resulted in his going to trial on a murder in the second degree charge rather than enter the plea he entered. This claim fails.

Defendant contends trial counsel was ineffective because he failed to interview crime scene witnesses and investigate the case. This is a conclusory claim. He fails to name, specifically, what witnesses would have changed the outcome of his case and he fails to describe, with detail, what information an investigation would have produced which would have changed the outcome of his case. This conclusory claim fails.[41]

Defendant argues trial counsel was ineffective because he failed to hire expert witnesses such a crash reconstructionist or a toxicology expert. Defendant decided to plead guilty. Defendant has not established that he would have paid for those experts to be hired before he entered a plea. Furthermore, he fails to show that the hiring of those experts would have resulted in any information which would have caused him not to enter the plea but instead, go to trial. This is a meritless claim.

It is clear that defendant's dispute with his case is his sentence. He is displeased that he was sentenced beyond the TIS guidelines. The State's case against defendant was overwhelmingly strong. Defendant drank to the point of intoxication and drove recklessly and without regard to the lives of many innocent people. He drove for miles before the inevitable happened: he killed one innocent person and injured three others. Defendant's counsel obtained

---

[40]Appendix to Postconviction Counsels' Motion to Withdraw at A-168-69.

[41]*Younger v. State, supra.*

17

an extremely good plea deal for him. Defendant was competent when he entered that plea and he knowingly and voluntarily entered it. He cannot show prejudice in any aspect, as he cannot, and does not attempt, to establish he would have rejected the plea and proceeded to a trial for murder in the second degree based on any alleged ineffectiveness of trial counsel. Furthermore, he has not shown any mitigating factor not known to this Court which would have resulted in a lesser sentence than was imposed. He has not established a manifest injustice occurred which overcomes the procedural bars of Rule 61. Defendant's claims fail.

The pending motion is resolved based upon the record and the law. There are no pertinent disputed facts which require the holding of a hearing. Defendant's motion for an evidentiary hearing is denied.

Finally, in light of the foregoing conclusions, I deem postconviction counsels' motion to withdraw to be moot.

IT IS SO ORDERED.

Very truly yours,

*/s/ Richard F. Stokes*

Richard F. Stokes

cc: Prothonotary's Office
    Donald Bucklin, Esquire
    James E. Ligouri, Esquire