# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4877-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

HITEN A. PATEL,
a/k/a HITEN PATEL, and
HITENDRA A. PATEL,

     Defendant-Appellant.

_____

Argued March 24, 2021 – Decided May 12, 2021

Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment Nos. 13-04-1262 and 13-08-2190.

Steven E. Braun argued the cause for appellant.

Melinda A. Harrigan, Assistant Atlantic County Prosecutor, argued the cause for respondent (Damon G. Tyner, Atlantic County Prosecutor, attorney; Melinda A. Harrigan, of counsel and on the brief).

PER CURIAM

Defendant Hiten A. Patel appeals from a June 5, 2019 order denying his petition for post-conviction relief (PCR) following a two-day evidentiary hearing. We affirm, substantially for the reasons set forth in Judge Bernard E. DeLury, Jr.'s comprehensive opinion.

Following an eight-day jury trial,[1] defendant was convicted of numerous offenses stemming from a series of sexual assaults on seven young women in Atlantic City, New Jersey. Defendant would solicit these women, some of whom were prostitutes, for sex, brandish a toy gun, and, at times, impersonate a police officer to commit these sexual assaults. Defendant was sentenced on April 2, 2015, to an aggregate term of forty-six years' imprisonment, with forty-five of those years subject to an eighty-five percent parole ineligibility in accord with the No Early Release Act, N.J.S.A. 2C:43-7.2. Defendant appealed his convictions and sentence, and we affirmed in an unpublished opinion. State v. Patel, No. A-3824-14 (App. Div. Jan. 18, 2017) (slip op. at 2). The Supreme Court denied defendant's petition for certification. State v. Patel, 230 N.J. 471 (2017).

_____

[1] Defendant reviewed and rejected the State's plea offer of thirty years, subject to an eighty-five percent parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant maintained his innocence and insisted on trial.

In lieu of restating the evidence presented at trial, we incorporate by reference the facts described in our unpublished opinion. See Patel, slip op. at 2-16. On May 14, 2018, defendant filed a petition for PCR. Judge DeLury determined that an evidentiary hearing was warranted to develop the record and resolve the issues related to defendant's ineffective assistance claims concerning trial strategy as well as the communications between defendant and his counsel. During the hearings, trial counsel James J. Leonard and defendant, as well as several family members, testified.

Leonard indicated that, although he only had the file for three or four months, he had enough time to prepare for trial and was able to meet with defendant, who took an active role in the defense of his case, on many occasions. Leonard testified that he discussed the details of defendant's case with him.

Leonard's initial strategy was to highlight the "inconsistencies" and the reasonable doubt in the State's case-in-chief. Leonard, however, believed that the number of victims and the similarity of their narratives necessitated that defendant testify to present his version of events that he did not rape the victims, but simply engaged in commercial sex transactions. Leonard advised defendant that, in light of his DNA on one of the victims, he needed to confront the fact that he had solicited prostitutes and "what was most important was not that the

jury necessarily liked the choices that he had made, but that they believe[d] that he didn't rape any of these women." Leonard indicated that, if defendant chose to testify, the defense could overcome the jury's aversion to defendant's extramarital conduct and determine he was credible. Because Leonard did not know whether defendant would choose to testify, he prepared him for the State's cross-examination. Notwithstanding defendant's initial hesitations with respect to admitting to soliciting prostitutes, he was "steadfast" in his support of Leonard's strategy.

Leonard prepared a series of questions – a "roadmap" – he intended to pose to defendant in the event defendant chose to testify. Because Leonard believed defendant knew the "nuances of the file better" than anyone else, he welcomed him to review the victims' statements, discovery, and other materials. The answers to the questions in the "roadmap" came from defendant. Indeed, the day before defendant testified, Leonard sent defendant a final version of the proposed testimony and indicated that if any information was "false . . . or needs to be corrected, now is the time to do so." Defendant responded a couple of hours later: "[a]ttached is the document of my testimony which was corrected with my best knowledge."

A-4877-18

After trial began, Leonard conducted a mock direct examination in front of defendant's family. Leonard counseled defendant that "what was on trial wasn't whether or not he was a good husband or that he liked to go to prostitutes" but rather "whether or not he had sexually assaulted" the victims.

Leonard testified his summation was strategic because he believed it was necessary to acknowledge that, although the victims had troubled lives, the jury did not have to believe them as well as confront the fact that the jury might not like defendant's decision to solicit prostitutes. Leonard indicated his summation was a tactical decision to emphasize that, while one could view defendant as a "low-life" and "failure as a husband," that did not equate to him being a rapist. Leonard commented:

> It was my strategy. I felt it was necessary to overcome the number of victims in the case and the emotion and the feelings that were out there. It was a read and I took it and I moved with it. But my comments were never reckless, they were all measured. They were all measured.

Leonard testified defendant was aware of the theme of his summation and knew he was going to be "brutally honest" about the events that transpired.

Defendant, on the other hand, testified that he was coerced into providing false testimony because Leonard told him that if he failed to do so, he would go to prison for a long time and not see his family. Defendant acknowledged

sending the email the day before he testified with corrections to the prospective line of questioning and admitted he did not inform Leonard his testimony was fabricated or false. Defendant indicated that he met with Leonard before trial to discuss the strategy of the case.

In his written decision denying defendant's petition, Judge DeLury found Leonard's testimony to be "credible, consistent and supported by the record." In that regard, he observed that Leonard "demonstrated a thorough understanding and recollection of his interactions with his client, the extent of his investigation and preparation" as well as "his strategic choices made both before and during trial." Conversely, Judge DeLury noted that defendant's "demeanor was uncertain and guarded." He found defendant's testimony during the evidentiary hearing was "belied by the record and by his own emails" which diminished his credibility. Likewise, he determined that the testimony of defendant's family was "not reliable" and "colored" by their emotional attachment to defendant. Based on his credibility determinations and findings of fact, Judge DeLury issued a ninety-three-page written opinion rejecting all of defendant's claims.

On appeal, defendant raises the following arguments for our consideration:

<u>POINT I</u>

DEFENDANT WAS DEPRIVED OF HIS RIGHT TO COUNSEL PRIOR TO AND DURING TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY CONSTITUTION.

A. THE FAILURE OF DEFENSE COUNSEL TO COMMUNICATE WITH DEFENDANT.

B. DEFENDANT SUBMITS HE WAS COERCED INTO TESTIFYING FROM A SCRIPT PREPARED BY DEFENSE COUNSEL.

C. DEFENSE COUNSEL WAS INEFFECTIVE BY WITHDRAWING HIS REQUEST FOR AN IDENTIFICATION CHARGE.

D. DEFENSE COUNSEL'S FAILURE TO CROSS-EXAMINE DETECTIVES HERBERT AND REIGEL CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

E. DEFENSE COUNSEL WAS INEFFECTIVE BY FAILING TO ADDRESS DEFENDANT'S WORK SCHEDULE.

F. DEFENDANT WAS NOT PREPARED BY DEFENSE COUNSEL FOR CROSS-EXAMINATION BY THE STATE REGARDING HIS RECORDED STATEMENT.

7

A-4877-18

G. DEFENSE COUNSEL'S INATTENTION TO THE RELIABILITY OF THE MIRANDA[2] HEARING RECORDING AND TRANSCRIPT COMPROMISED THE INTEGRITY OF THE HEARING.

H. DEFENSE COUNSEL'S SUMMATION WAS INFLAMMATORY AND PREJUDICIAL, TO THE DETRIMENT OF THE DEFENSE.

I. DEFENSE COUNSEL WAS INEFFECTIVE BY FAILING TO OBJECT TO VARIOUS PORTIONS OF THE JURY INSTRUCTIONS WHICH WERE ERRONEOUS AND WHICH DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR TRIAL.

J. DEFENSE COUNSEL HAD A CONFLICT OF INTEREST BECAUSE OF HIS OWNERSHIP OF THE BOARDWALK JOURNAL.

POINT II
REVERSAL OF THE TRIAL COURT'S DENIAL OF POST-CONVICTION RELIEF IS WARRANTED DUE TO CUMULATIVE ERROR.

To establish a prima facie claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test enumerated in Strickland v. Washington, 466 U.S. 668, 687 (1984), which our Supreme Court adopted in State v. Fritz, 105 N.J. 42, 58 (1987).  To meet the first Strickland/Fritz prong, a defendant must establish that his counsel "made errors so serious that counsel

---

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. The defendant must rebut the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id. at 689. Thus, this court must consider whether counsel's performance fell below an objective standard of reasonableness. Id. at 688. Moreover, defendant must make those showings by presenting more than "bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). The law is "clear that . . . purely speculative deficiencies in representation are insufficient to justify reversal." Fritz, 105 N.J. at 64.

To satisfy the second Strickland/Fritz prong, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. A defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "[I]f counsel's performance has been so deficient as to create a reasonable probability that these deficiencies materially contributed to defendant's

A-4877-18

conviction, the constitutional right will have been violated." Fritz, 105 N.J. at 58.

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013); see also State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014) ("If a court has conducted an evidentiary hearing on a petition for PCR, we necessarily defer to the trial court's factual findings."). Where an evidentiary hearing has been held, we do not disturb "the PCR court's findings that are supported by sufficient credible evidence in the record." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting Nash, 212 N.J. at 540). We review any legal conclusions de novo. Nash, 212 N.J. at 540-41 (citing State v. Harris, 181 N.J. 391, 415-16 (2004)).

After carefully reviewing the record, and applying this deferential standard of review, we are not persuaded by defendant's arguments. We are satisfied that Judge DeLury's findings of fact, credibility determinations, and legal conclusions are well-supported. We therefore affirm the denial of defendant's petition for the reasons expressed in Judge DeLury's well-reasoned written decision. We add the following brief remarks.

Defendant contends that Leonard was ineffective "by demanding that he testify in accordance with defense counsel's view of the matter without regard for defendant's express desire to tell the jury his true account of the facts." In essence, defendant claims that Leonard suborned perjury. We disagree.

There is nothing in the record, aside from defendant's bald assertions, Cummings, 321 N.J. Super. at 170, to support defendant's contention. To the contrary, Leonard denied fabricating defendant's testimony and testified that the responses to the questions in the "roadmap" came directly from defendant. Likewise, the day before defendant testified, Leonard sent him the "roadmap" and requested that defendant advise him "if these questions and answers . . . [are] an accurate representation of what occurred, based upon your best recollections." Leonard informed defendant that if "anything is false, [in]correct[,] or needs to be corrected, now is the time to do so." Defendant responded "[a]ttached is the document of my testimony which was corrected with my best knowledge." In short, the record belies defendant's bald assertion that Leonard coerced him into testifying to falsities.

Defendant also argues that Leonard's summation was prejudicial because it expressed sympathy towards the victims while denigrating him. We remain unconvinced.

11

Defendant's reliance on State v. Reddick, 76 N.J. Super. 347 (App. Div. 1962) is misplaced.[3] Although acknowledging that certain comments overstepped the bounds of legitimate trial strategy, the panel made clear that typically "a defendant is bound by his own counsel's trial tactics and strategy provided that defendant's right to a fair trial is not impugned." Id. at 352. The panel took great lengths to "emphasize that ordinarily reference by defense counsel to his own client's character and criminal record is not objectionable. Counsel often do so in anticipation of and in order to de-emphasize the prosecutor's presentation." Ibid.

The record in this case, at the trial and the PCR evidentiary hearing, reveals that Leonard's summation was a strategic decision to underscore that, while one could view defendant as a "low-life" and "failure as a husband," he was not a rapist. Defendant was "steadfast" in his support of this trial strategy. Moreover, Leonard testified defendant was aware of the theme of his summation and knew he was going to be "brutally honest" about the events that transpired. Judge DeLury found Leonard's testimony to be credible, and we defer to that

_____

[3] Defendant also relies on State v. Bennefield, 567 A.2d 863 (Del. 1989). However, we are not bound by that decision. See Lewis v. Harris, 188 N.J. 415, 436 (2006) (noting that our courts are "not bound by . . . the precedents of other states, although they may provide guideposts and persuasive authority").

determination because he had the ability to hear and see the witnesses. Pierre, 223 N.J. at 579. We are satisfied that Leonard's comments during summation did not deprive defendant of a right to a fair trial and, therefore, he did not establish a prima facie showing of ineffectiveness under Strickland.

Defendant also contends that Leonard was ineffective for withdrawing the request for an identification charge. We disagree. We are mindful that "'[a]ppropriate and proper charges are essential for a fair trial.'" State v. Baum, 224 N.J. 147, 158-59 (2016) (alteration in original) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). As Judge DeLury observed, however, it was sound trial strategy to admit defendant solicited these women for sex and, instead, focus the jury's attention on their credibility in an effort to prove he did not sexually assault them. In that regard, identification was not an issue in the case. See State v. Davis, 363 N.J. Super. 556, 561 (App. Div. 2003) (noting "a model identification charge should be given in every case in which identification is a legitimate issue."). Therefore, Leonard's withdrawal of his request for an identification charge was neither deficient nor prejudicial.

Defendant argues Judge DeLury's instruction concerning the recovery of the imitation gun in his car on April 5, 2011 was contrary to an earlier ruling where he found that the nature of defendant's assaults did not rise to the level of

13

a "signature crime" permitting their use to identify him as the perpetrator. Although this argument was raised on direct appeal and would ordinarily be barred, R. 3:22-5, we did not address the contention that trial counsel was ineffective in failing to object to the instruction. In any event, we find defendant's argument to be without merit. As we previously noted, the 2011 incident "was used only to identify defendant as the owner and driver of the car identified by the witnesses, and someone who had a toy gun in his car, none of which defendant denied." Patel, slip op. at 34. Indeed, defendant testified that he owned the toy gun which he used for self-defense when soliciting prostitutes on Pacific Avenue. In that regard, defendant testified that he used a toy gun with M.D. to prevent her from stealing his wallet. Likewise, defendant testified that he brandished the toy gun when K.G. pulled out a boxcutter after he requested that she give him his money back. We therefore discern no prejudice because neither defendant's identity, nor his possession and use of the toy gun, were at issue in the case.

As for defendant's remaining arguments not expressly discussed above, they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

A-4877-18

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

15