# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE       )
                                )
      v.                    )      Crim. ID. No. 2310008139
                                )
JAVON TURNER         )

Submitted: October 13, 2025
Decided: January 12, 2025

*Upon Javon Turner's*
*Motion for Postconviction Relief,*
**DENIED.**

## <u>MEMORANDUM OPINION AND ORDER</u>

Zachary D. Rosen, Esquire, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, *Attorney for the State of Delaware*

Javon Turner, *Self Represented*

**Lugg, J.**

Javon Turner has filed a motion seeking postconviction relief in which he challenges his attorney's performance at various stages of his case. The Court has reviewed Turner's motion,[1] memorandum,[2] and addendum,[3] the affidavit of Trial Counsel,[4] and the State's response.[5] Turner's motion for postconviction relief is denied.

## BACKGROUND

On October 17, 2023, the Wilmington Police Department ("WPD") received a "ShotSpotter" alert of multiple shots fired in the area of the 800 Block of West 7th Street in the City of Wilmington.[6] WPD Officer Wilson, patrolling nearby, heard gunshots in the area of 7th Street and North Monroe Street and ran in that direction to investigate.[7] Officer Wilson saw three males running eastbound on West 6th

---

[1] D.I. 51 ("Def. Mot.").

[2] D.I. 52 ("Def. Mem.").

[3] D.I. 61 ("Def. Addendum").

[4] D.I. 57 ("Aff. Trial Counsel").

[5] D.I. 65 ("State's Resp.").

[6] D.I. 1, Aff. ¶ 3. Because Turner pled guilty, the Court draws the facts from the affidavit of probable cause supporting his arrest. "Shotspotter" is the name of a company that provides gunshot alerts to law enforcement through a "network of gunfire-detecting acoustic sensors." *ShotSpotter v. VICE Media, LLC*, 2022 WL 2373418, at *1 (Del. Super. Ct. June 30, 2022). When gunfire is detected, the system "provides a location of the gunfire" to the police department.

[7] Aff. ¶ 4.

2

Street toward North Madison Street.[8] He ordered the three men to stop; one stopped, and the other two continued to flee.[9] The man who stopped was later released and not charged in this incident.[10] Meziah Thompson, one of the two men who ignored police commands and fled on foot, was apprehended by another officer.[11]

Meanwhile, investigators found a young man "in the 800 Block of West 7th Street, suffering from numerous gunshot wounds about his body."[12] The "victim was treated on scene and transported to the Christiana Hospital Emergency Room for treatment."[13] As the investigation progressed, officers found 27 spent shell casings, a live round, and 8 projectiles "within the 800 Block of West 7th Street,"[14] and collected video surveillance of that location.[15]

The video surveillance showed the victim running eastbound in the 800 Block of West 7th Street as a masked man chased and shot him.[16] The victim fell to the

---

[8] *Id*.

[9] *Id*.

[10] Aff. ¶ 10.

[11] Aff. ¶ 4.

[12] Aff. ¶ 6.

[13] *Id*.

[14] Aff. ¶ 7.

[15] Aff. ¶ 8.

[16] Aff. ¶¶ 8, 9.

ground, and the masked man continued to shoot him from close range.[17] Other video surveillance showed two men, wearing face masks and armed with firearms, running from the scene immediately after the shooting.[18] The first man—the shooter—wore black and white sneakers, black pants, and a dark colored hooded sweatshirt with white lettering, underneath a black jacket.[19] The second man wore gray sneakers, dark colored pants, and a light gray hooded jacket with a logo on the left chest area, underneath a black jacket.[20] Meziah Thompson's attire at the time of his arrest matched that of the second man seen fleeing the scene.[21]

Officers canvassed the area and found a firearm in the rear yard of 823 West 6th Street.[22] That weapon matched the description of the firearm possessed by the first man in the surveillance video.[23] Further review of surveillance footage revealed Javon Turner, a few minutes prior to the shooting, clad in the attire worn by the

---

[17] Aff. ¶ 9.

[18] Aff. ¶ 8.

[19] Aff. ¶¶ 8, 12.

[20] Aff. ¶ 8.

[21] Aff. ¶ 10.

[22] Aff. ¶ 11.

[23] *Id*.

shooter.[24]  In the video preceding the shooting, Turner's face was not masked and officers identified him by comparing the video footage to known pictures of Turner.[25]

On January 16, 2024, a New Castle County grand jury returned an indictment charging Turner with Attempted Murder First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Conspiracy First Degree, Wearing a Disguise During the Commission of a Felony, Possession of a Firearm by a Person Prohibited ("PFBPP"), and Possession of Ammunition by a Person Prohibited ("PABPP").[26]  On April 8, 2024, Turner moved to suppress evidence found in the search of an apartment[27] and evidence secured from an iPhone.[28]  The hearing on these motions was continued at the defendant's request from August to November 2024 to allow the defendant to develop mitigation material to provide to the State before it conveyed its final plea offer.[29]  On November 15, 2024, the Court heard argument on Turner's motions and took the matter under advisement.[30]  Meanwhile, Turner's trial was scheduled to begin on January 6, 2025.[31]

---

[24] Aff. ¶ 12.

[25] Aff. ¶ 13.

[26] D.I. 5.

[27] D.I. 13.

[28] D.I. 14.

[29] D.I. 29.

[30] D.I. 33.

[31] D.I. 46.

On December 3, 2024, the State informed the Court that it agreed "not to enter any evidence obtained from Mr. Turner's phone in its case-in-chief"[32] rendering that suppression motion moot.[33] Then, on December 23, 2024, Turner pled guilty to Attempted Murder in the First Degree.[34] At the parties' mutual request and recommendation, the Court sentenced Turner immediately to the minimum term of fifteen years incarceration followed by decreasing levels of supervision.[35] Turner did not appeal his conviction or sentence.[36]

On January 30, 2025, Turner, acting *pro se*, filed a Motion for Postconviction Relief[37] accompanied by a memorandum in support of his motion.[38] His Trial

---

[32] D.I. 37.

[33] D.I. 39.

[34] D.I. 47 ("Plea Agreement") Both Turner's Plea Agreement and Truth-in-Sentencing Guilty Plea Form are docketed as D.I. 47.

[35] D.I. 48 ("Sentence Order").

[36] Turner filed a "Rule 35 Correction of Illegally Imposed Sentence" in which he argued the Court's sentence violated the United States Supreme Court's decision in *Erlinger v. United States,* 602 U.S. 821 (2024). D.I. 63. This Court denied the motion, finding that "Turner's sentence was authorized by his judgment of conviction and is legal." D.I. 66 ¶ 7.

[37] Def. Mot.

[38] Def. Mem.

Counsel submitted an affidavit responding to Turner's allegations,[39] and the State filed a response.[40]  Turner did not reply.[41]

Turner asserts two claims in his motion.  First, he contends his Trial Counsel was ineffective for failing to inform him of "newly discovered co-defendant's statements upon agreement with the State."[42]  Second, he asserts that his Trial Counsel's "failures to raise critical pretrial motions amount[ed] to an actual prejudice in violation [of the] Due Process Clause."[43]  For the reasons set forth below, the Court denies Turner's motion.

## ANALYSIS

"Superior Court Criminal Rule 61 provides the exclusive remedy for setting aside a final judgment of conviction."[44]  The Rule is "intended to correct errors in the trial process, not to allow defendants unlimited opportunities to relitigate their

---

[39] Aff. Trial Counsel.

[40] State's Resp.

[41] The Court's May 19, 2025, Scheduling Order directed Turner to "file any reply to the State's response within 45 days of the docketing of the State's response."  D.I. 58 ¶ 7.  The State docketed its response on August 29, 2025.  State's Resp.  Turner did not reply.  The Court considers this motion under consideration 45 days after the docketing of the State's response, October 13, 2025.

[42] Def. Mem. at 1.

[43] *Id.*

[44] *Jackson v. State*, 2007 WL 2231072, at *1 (Del. Aug. 2, 2007).

convictions."[45]  Rule 61 provides incarcerated individuals a procedure to seek to have a conviction set aside on the ground that the Court lacked jurisdiction or to collaterally attack their conviction.[46]  Before addressing any substantive issues this Court must first consider and apply Rule 61's procedural bars.  The rule prohibits the Court from considering a motion that is: (1) untimely (filed more than one year after the judgment of conviction is final);[47] (2) repetitive;[48] (3) procedurally defaulted;[49] or (4) formerly adjudicated.[50]  Turner's first, timely, ineffective assistance of counsel claims are not procedurally barred.

### *Ineffective Assistance of Counsel*

To succeed on an ineffective assistance of counsel claim, Turner must meet the two-prong test established by the United States Supreme Court in *Strickland v. Washington.*[51]  Under *Strickland,* a defendant must show (1) "that counsel's representation fell below an objective standard of reasonableness;"[52] and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the

---

[45] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).

[46] Super. Ct. Crim. R. 61(a)(1).

[47] Super. Ct. Crim. R. 61(i)(1).

[48] Super. Ct. Crim. R. 61(i)(2).

[49] Super. Ct. Crim. R. 61(i)(3).

[50] Super. Ct. Crim. R. 61(i)(4).

[51] 466 U.S. 668, 687 (1984).

[52] *Id.* at 688.

result of the proceeding would have been different."[53] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[54]

The Court may dispose of an ineffective assistance of counsel claim if the defendant fails to show a reasonable probability of a different result but for the counsel's alleged errors.[55] "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."[56] A defendant must allege prejudice and then substantiate that allegation.[57] Because a defendant must prove both parts of an ineffective assistance of counsel claim, a failure to establish sufficient prejudice alone is enough to defeat an ineffective assistance of counsel allegation. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'"[58] The "court must consider the 'totality of the evidence,' and 'must

---

[53] *Id.*

[54] *Id.* at 694.

[55] *Id.* at 697.

[56] *Id.* at 693.

[57] *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

[58] *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693).

ask if the [movant] has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.'"[59]

An ineffective assistance of counsel claim is a question of whether Trial Counsel's actions were adequate.[60] A review of counsel's representation is subject to a strong presumption that counsel's conduct was professionally reasonable.[61] As such, mere allegations will not suffice; instead, a defendant must make concrete allegations of ineffective assistance, and then substantiate them, or risk summary dismissal.[62]

### *Turner's Claims*

#### *1. Ineffective Assistance of Counsel – "Newly Discovered" Co-Defendant's Statement*

Turner contends that his co-defendant, Meziah Thompson, used privileged information to "get a lesser sentence" and he, Turner, was never informed of the agreement.[63] Turner fails to substantiate these allegations, and his recitation of the circumstances surrounding Thompson's guilty plea are belied by the record. Thompson pled guilty on September 4, 2024; his plea was not premised on his

---

[59] *State v. Reyes*, 155 A.3d 331, 343 (Del. 2017) (citing *Swan v. State*, 28 A.3d 362, 384 (Del. 2011) (quoting *Strickland*, 466 U.S. at 695-96)).

[60] *State v. Wright*, 2023 WL 2128338, at *3 (Del. Super. Ct. Feb. 21, 2023).

[61] *Id*.

[62] *Younger v. State*, 580 A.2d 553, 556 (Del. 1990).

[63] Def. Mem. at 16.

cooperation with the State.[64] Nor did Thompson provide any information to the State to secure his plea. The State, responding to Turner's allegation, stated "there was never any information given to the State by the co-defendant that [Turner] was not privy to. There was no agreement to testify."[65]

Trial Counsel's representation of Turner was professionally reasonable. On October 20, 2024, after learning of Thompson's plea, Trial Counsel met with Turner.[66] During this meeting, "Turner informed Counsel that he wished to accept a plea that was the same as his co-defendant's."[67] So informed, Trial Counsel negotiated a plea with the State on Turner's behalf.[68] Trial Counsel's efforts convinced the State to extend a plea to Attempted Murder First Degree and to recommend the statutorily required minimum term of incarceration for that offense.[69] Furthermore, the State agreed to dismiss the remaining charges against Turner.[70]

---

[64] *State v. Thompson,* Crim. ID. No. 2310007956, D.I. 18.

[65] State's Resp. at 7.

[66] Aff. Trial Counsel ¶2.

[67] *Id.*

[68] *Id.*

[69] Sentence Order.

[70] Plea Agreement.

Trial Counsel met with Turner several times before and after Thompson's plea and sentencing. She met with Turner to review discovery "on January 3, 2024; February 9, 2024; March 15, 2024; May 2, 2024; June 1, 2024; June 17, 2024; [and] August 14, 2024."[71] After learning of Thompson's plea, Counsel met with Turner by Zoom "on October 23, 2024; November 1, 2024 [the day of Thompson's sentencing]; November 17, 2024; and December 6, 2024" and "in December counsel met with Mr. Turner at Howard R. Young Correction Institution on two (2) occasions."[72] On December 23, 2024, Turner appeared in the Superior Court, tendered his plea and, with Trial Counsel at his side, engaged in a colloquy with the Court.[73] The record establishes that Turner was fully aware of Thompson's plea and sentence when he—Turner—chose to plead guilty. After accepting his plea, the Superior Court sentenced Turner consistent with the parties' agreement.[74] "There was no discovery, or no new information, that Counsel received near, at the time of, or after Mr. Turner entered the plea regarding Mr. Thompson. Mr. Turner entered

---

[71] Aff. Trial Counsel ¶ 3.

[72] *Id.* ¶ 4.

[73] Plea Agreement.

[74] Trial Counsel thoroughly investigated Turner's "mental health concerns." Aff. Trial Counsel ¶ 8. While Counsel was satisfied Turner was competent to stand trial, his "mental health evaluation was used for mitigation." *Id.* And "[t]he Court expressly referenced this mitigation when following the joint plea agreement between the State and Mr. Turner." *Id.*

the plea with full awareness of all discovery and the plea agreement his co-defendant accepted."[75]

Turner contends that, after his plea and sentencing, his attorney told his parents "that she did not want to go to trial due to co-defendant Meziah Thompson's agreement to testify against defendant."[76] To be sure, on December 23, 2024, Turner informed the Court of his satisfaction with counsel's representation of him and that his lawyer fully advised him of his rights.[77] "Counsel was prepared to proceed to trial, and litigated all issues believed to be with merit, prior to trial."[78] Trial Counsel did not seek to avoid trial; to the contrary, she diligently prepared for trial while simultaneously developing a mitigation case. And, of course, it was Turner's decision alone to plead guilty.[79] Trial Counsel's performance was professionally reasonable.

To the extent Turner argues that Thompson entered into an agreement with the State to testify against him in violation of their—Turner and Thompson's—joint

---

[75] Aff. Trial Counsel ¶ 5.

[76] Def. Mem. at 8.

[77] Plea Agreement.

[78] Aff. Trial Counsel ¶ 9.

[79] *Taylor v. State*, 28 A.3d 399, 406 (Del. 2011). ("A criminal defendant has 'ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.'" (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983))).

defense agreement, that claim plainly lacks merit.[80] Thompson's plea agreement did not call for Thompson to testify against Turner,[81] nor was there a "joint defense."[82] Thompson "was not cooperating with the State, did not have an agreement with the State to testify, did not give information to the State (for a lower plea offer or otherwise), and was not acting as an agent for the State."[83]

Turner alleges his Trial Counsel failed to show him an offer made by the State.[84] But there is no evidence that Trial Counsel failed to convey any plea or other pertinent information to Turner. To the contrary, Trial Counsel met with Turner at least fourteen times, reviewed Thompson's plea with him on multiple occasions, prepared a mitigation case, and negotiated a favorable resolution on Turner's behalf.[85] The record amply demonstrates Trial Counsel provided professionally

---

[80] Within this claim, Turner asks the Court to order the State turn over all communications with Thompson and his Counsel, including notes and times of communications. Def. Addendum at 7. While there is no specific right to discovery under Rule 61, this Court, possesses "inherent authority . . . to grant particularized discovery for good cause shown." *Cabrera v. State*, 173 A.3d 1012, 1033 (Del. 2017) (internal citations omitted). There is no evidence that the State failed to provide any information it was legally obligated to provide Turner. Thus, in the absence of a showing of good cause, the Court declines to order the State to provide any additional information to Turner.

[81] State's Resp. at 6.

[82] *Id.* at 7.

[83] *Id.* at 9.

[84] Def. Mem. at 12.

[85] *See generally,* Aff. Trial Counsel.

14

reasonable assistance. Turner "entered the plea with full awareness of all discovery."[86]

Turner's assertion that he suffered a violation of an agreed-upon "joint defense" with Thompson, too, lacks merit. In a criminal case it is common for defendants to be indicted and tried together.[87] But, joinder for trial presents no mutuality of defense.[88] For this reason, dual representation is strongly discouraged.[89] Where defenses diverge to become mutually antagonistic, individual defendant's trials are often severed.[90] Of course, the State may not deploy an agent to infringe upon a defendant's Sixth Amendment right to counsel;[91] but that did not occur here.[92] Thompson and Turner were free to independently negotiate plea

---

[86] *Id.* ¶ 5 (cleaned up).

[87] Super. Ct. Crim. R. 8(b); *State v. Phillips*, 2015 WL 5332388, at *9 (Del. Super. Ct. Sept. 3, 2015) (citing *Jenkins v. State*, 230 A.2d 262, 272 (Del. 1967).

[88] *See Phillips v. State*, 154 A.3d 1146, 1157 (Joinder can exist where there is a "presence of hostility between a defendant and his codefendant or 'mere inconsistencies in defenses or trial strategies.'" (quoting *Outten v. State*, 650 A.2d 1291, 1298 (Del. 1994)).

[89] *State v. Morris*, 1978 WL 183774, at *1 (Del. Super. Ct. June 29. 1978) ("Dual representation must be approached with caution by the lawyer and the Court."); *Lewis v. State*, 757 A.2d 709, 712 (2000) ("The Comment to Rule 1.7 [of the Delaware Lawyers' Rules of Professional Conduct] states '[t]he potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant.'").

[90] *Phillips*, 2015 WL 5332388, at *10.

[91] *State v. Robinson*, 209 A.3d 25, 47-48 (2019).

[92] State's Resp. at 9.

15

resolutions, and they did. There is no evidence Thompson encroached upon Turner's right to counsel to leverage a better deal on his—Thompson's—behalf. And, to an objective observer, each defendant's plea reflects an attribution of responsibility commensurate with the role of each actor. While the facts linked Thompson and Turner as conspirators, evidence revealed Turner to be the individual who chased down and shot the victim.[93]

### 2. Ineffective Assistance of Counsel – "Critical Pretrial Motions"

Turner pled guilty.[94] A judge of this Court accepted his plea after a thorough colloquy.[95] By pleading guilty, Turner waived any alleged errors occurring before the entry of his plea.[96] In any event, Turner has failed to demonstrate deficient performance or prejudice resulting from Trial Counsel's representation.

### a. Suppression Motions

Turner contends that his Trial Counsel "was in violation [of] the Due Process Clause when she failed to raise fundamental objections during critical pretrial stages."[97] According to Turner, Trial Counsel failed to "raise suppression to their

---

[93] Aff. ¶ 12.

[94] Plea Agreement.

[95] *Id*.

[96] *Dollard v. State*, 2020 WL 2393353, at *2 (Del. May 11, 2020) (citing *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003)).

[97] Def. Mem. at 4.

fullest potential"[98] by seeking to exclude "falsely included surveillance information within the warrant/probable cause,"[99] the firearm found by police,[100] and certain items seized during the search of an apartment and a cell phone.[101]

Turner largely ignores the fact that Trial Counsel sought to suppress evidence obtained in the search of an apartment[102] and evidence obtained from an iPhone.[103] The Court heard argument on these motions on November 15, 2024, and took them under advisement.[104] Following argument, the State agreed not to use evidence found on the iPhone in its case-in-chief.[105] Turner's subsequent guilty plea rendered the motions moot.[106]

Trial Counsel explained she did not file a motion to suppress the surveillance footage because Turner lacked a reasonable expectation of privacy when walking along the public roads captured in the surveillance footage.[107] Further, she did not

---

[98] *Id.* at 14.

[99] *Id.*

[100] *Id.*

[101] *Id.*

[102] D.I. 13.

[103] D.I. 14.

[104] D.I. 33.

[105] D.I. 37.

[106] D.I. 39; Aff. Trial Counsel ¶ 6.

[107] Aff. Trial Counsel ¶ 6.

file a motion to suppress the firearm because the weapon was found abandoned in the rear yard of 823 West 6th Street.[108]

### i. Surveillance Footage

Turner alleges that his Trial Counsel should have suppressed surveillance footage capturing him in the area of the shooting.[109] The Fourth Amendment affords citizens a reasonable expectation of privacy.[110] "It is well-established that what a person knowingly exposes to the public is not a subject of Fourth Amendment protection."[111] Turner had no reasonable expectation of privacy in his movement in public areas and, thus, no Fourth Amendment protections as they relate to the surveillance footage. Trial Counsel's decision to forego a challenge to the admissibility of the surveillance video was professionally reasonable.

### ii. Abandonment

Next, Turner contends that Trial Counsel should have suppressed the firearm found by police when they canvassed the area where the shooting occurred.[112]

---

[108] *Id.*; Aff. ¶ 11.

[109] *See* Def. Mem. at 14.

[110] *Katz v. U.S.*, 389 U.S. 347, 360 (1967) (J. Harlan concurring); *Garnett v. State*, 308 A.3d 625, 641 (Del. 2023).

[111] *State v. King*, 2021 WL 211150, at *5 (Del. Super. Ct. Jan. 21, 2021) (cleaned up) (quoting *Kowalski v. Scott*, 2005 WL 703757, at *1 (3d. Cir. Mar. 29, 2005) (citing *Katz*, 389 U.S. at 351)).

[112] Def. Mem. at 14-15.

"Property discarded by a suspect who refuses to submit to an officer's authority and flees is deemed abandoned. There is no legal basis under the Fourth Amendment to suppress that abandoned property."[113] Here, Turner refused to submit to officer authority, fled the scene of the shooting, and discarded the weapon, abandoning it and forfeiting any Fourth Amendment protections he otherwise possessed in the weapon. Trial Counsel's decision not to challenge the recovery of the abandoned firearm was professionally reasonable.

"Judicial scrutiny of counsel's performance is highly deferential."[114] "Courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance," and the burden falls on the defendant to rebut this "strong presumption."[115] Turner, through his unsubstantiated allegations, fails to meet this burden. Trial Counsel's informed decision not to seek suppression of legitimately, and Constitutionally, acquired evidence was professionally reasonable.

### b. Timeliness

Turner contends his Trial Counsel provided ineffective assistance of counsel because of "gross motions of continuances, that violated defendant's indictment

---

[113] *Jackson v. State*, 990 A.2d 1281, 1289 (Del. 2009) (citing *California v. Hodari D.*, 499 U.S. 621, 629 (1991)); *see King*, 2021 WL 211150, at *6.

[114] *Cooke v. State,* 338 A.3d 418, 455 (Del. 2025) (cleaned up).

[115] *Id.*

19

challenges, and his counsel[ ] [failed] to request for a speedy trial."[116] Turner alleges his counsel provided ineffective assistance of counsel when she did not object to the State's failure to indict him within forty-five days of his arrest[117] and to multiple trial continuances.[118]

In fact, Trial Counsel filed a Motion to Dismiss for Lack of Indictment on January 9, 2024,[119] but that motion was deemed moot on January 29, 2024, because the State had indicted the case.[120] Ninety days elapsed between Turner's October 18, 2023 arrest[121] and his January 15, 2024 indictment;[122] this "delay" does not amount to a speedy trial violation.[123] Turner's case proceeded to trial with alacrity despite continuances to allow, in part, development of Turner's mitigation case. And Trial Counsel was prepared for trial.[124] Turner chose to plead guilty. Turner's claim

---

[116] Def. Mem. at 11.

[117] *Id.* at 12.

[118] *Id.*

[119] D.I. 4.

[120] D.I. 19; Aff. Trial Counsel ¶ 7.

[121] D.I. 1.

[122] D.I. 5.

[123] *State v. Moore*, 2024 WL 2292230, at *4 (Del. Super. Ct. May 21, 2024) (The Court found that a delay between arrest and indictment of 91 days was not a violation of a defendant's speedy trial rights.).

[124] Aff. Trial Counsel ¶ 9.

that Trial Counsel provided ineffective assistance of counsel because she failed to address speedy trial issues is without merit.

## CONCLUSION

Trial Counsel provided Turner constitutionally effective assistance of counsel. Trial Counsel met with Turner on multiple occasions to guide him through the trial process, discuss materials provided by the State, and assess Thompson's plea. These meetings culminated in Turner's knowing, intelligent, and voluntary election to plead guilty. Trial Counsel's diligent preparation of mitigation material prompted the State to join Turner in recommending the minimum sentence required by law, a sentence the Court imposed. The record evidences Turner's awareness and understanding of Thompson's plea. And, while Turner's plea forestalls any challenges to the events that preceded it, Trial Counsel professionally considered and lodged appropriate evidentiary challenges and chose not to pursue legal arguments unsupported by extant law. Trial Counsel was not ineffective, and Turner suffered no prejudice. Turner's Motion for Postconviction Relief is **DENIED**.

**IT IS SO ORDERED.**

Sean P. Lugg, Judge

21